■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEXTER THOMAS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Schwartzwald, J.), rendered January 4, 1984, convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, as a matter of discretion in the interest of justice, and a new trial is ordered.

The defendant, a black man, was arrested by three white undercover police officers after they approached him on the street in a predominantly black and Hispanic neighborhood and observed him place his hand on the butt of a gun secreted in his waistband. The defendant was subsequently charged with criminal possession of a weapon in the third degree. At the trial, the defendant took the stand in his own behalf and testified that he found the gun in a nearby playground and picked it up with the intention of discarding it. He further testified that when the undercover officers—who had not identified themselves—approached him, he believed them to be muggers and placed his hand on the weapon to discourage them from pursuing him. Moreover, although the officers testified that they were wearing badges around their necks during the arrest, the defendant testified that he observed no badges and that it was only after the officers had handcuffed him that he discovered they were policemen.

The defendant's principal defense, as charged to the jury by the court, was the contention that his possession of the weapon had been temporary and innocent. Nevertheless, the prosecutrix, both in her cross-examination of the defendant and subsequently in summation, repeatedly sought to impeach the veracity of the defendant's contention that he believed the arresting officers to be muggers by referring to the officers' race. The prosecutrix first asked defendant, "[w]hen you saw two white guys with badges hanging around their necks jump out of an unmarked car, is it your testimony that you thought they were muggers?" Continuing, the prosecutrix again stressed the race of the officers by asking defendant what he did when he "saw these two white police officers jump out of an unmarked car". She then asked the defendant "[h]as it happened before that three white guys in an unmarked police car pulled up to you and jumped out and jumped you and knocked you down to the ground". The prosecutrix further

pursued this line of inquiry by asking the defendant "[i]s it your testimony that you have been mugged by three white guys in this neighborhood?" and questioning whether he believed "that these three white guys" were going to shoot him. Thereafter, in her summation the prosecutrix returned to this theme, arguing that, "I would submit to you that if three white males jumped out of a green Plymouth Volarie *[sic]* in this neighborhood and ran up to you you might, you just might tend to think these are not muggers, these could be police officers". Finally, in one of her concluding summation comments, the prosecutrix again urged the jury to consider that when the defendant "saw these three white guys running up to him * * * he was not holding on to his gun or trying to make them think it was a gun or knife to protect himself". The defendant was subsequently convicted of criminal possession of a weapon in the third degree and now appeals. We conclude that the aforementioned remarks deprived the defendant of a fair trial and reverse.

The inference to be drawn from the prosecutrix's thematic references to the officers' race is that a black man in a black neighborhood cannot conceivably be the victim of a crime committed by a white man. Such an appeal to the jury can serve no purpose other than to arouse racially prejudiced attitudes and to undermine the jury's dispassionate and objective consideration of the evidence adduced at trial. Indeed, as the United States Court of Appeals for the Second Circuit has aptly observed, "[e]ven a reference that is not derogatory may carry impermissible connotations, or may trigger prejudiced responses in the listeners that the speaker might neither have predicted nor intended" *(McFarland v Smith,* 611 F2d 414, 417). This court, moreover, has repeatedly condemned, as divisive and inimical to both democratic and logical principles, arguments which encourage the jury to weigh the evidence by considering the race of a particular witness. As we stated nearly a quarter century ago, "[t]he vice of such an argument is not only that it is predicated on a false and illogical premise, but more important it is divisive: it seeks to separate the racial origin of witnesses in the minds of the jury, and to encourage the weighing of [evidence] on the basis of racial similarity or dissimilarity of the witnesses. The argument offends the democratic and logical principle that race, creed or nationality, in themselves, provide no reason for believing or disbelieving a witness' testimony" *(People v Hearns,* 18 AD2d 922, 923; *see also, People v Green,* 89 AD2d 874; *People v Burris,* 19 AD2d 557, 558).

The prosecutrix's comments impermissibly encouraged the jury to weigh the credibility of the defendant's testimony by considering the race of the arresting officers, and, accordingly, we conclude that the judgment of conviction must be reversed. Although the defendant failed to register objections to the prosecutrix's comments in this case, a review of the errors in the interest of justice is warranted.

Finally, in light of our disposition, we need not address the defendant's remaining contentions. Weinstein, J. P., Rubin, Kooper and Sullivan, JJ., concur.