THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OTIS GLENN, Also Known as SAMMY McBRIDE, Appellant.

Fourth Department, December 30, 1992

86

## APPEARANCES OF COUNSEL

*Howard Broder,* Rochester, for appellant.

*James B. Vargason, District Attorney* of Cayuga County, Auburn *(Karl Sleight* of counsel), for respondent.

## OPINION OF THE COURT

DOERR, J.

In the early morning hours of June 8, 1989, State Trooper Jerome Crawford stopped a 1989 Thunderbird, which was traveling west on the New York State Thruway, because the Thunderbird did not have a rear license plate. Defendant, who was driving the vehicle, indicated that a temporary registration was affixed to the window. Trooper Crawford observed that the temporary registration incorrectly described the vehicle as a 1986 Thunderbird. The passenger, later identified as Valfonso DeWitt, exited the vehicle and showed the Trooper documentation that proved that the vehicle had been purchased for cash. DeWitt indicated that the vehicle belonged to his employer and that he was transporting the vehicle to Ohio for the employer. DeWitt also informed Trooper Crawford that they had begun their journey in Boston, Massachusetts, but Trooper Crawford had noticed that their Thruway ticket indicated that they had entered the Thruway in Woodbury, New York. Trooper Crawford returned to his vehicle to run checks and realized that defendant, in response to Crawford's request for his license, had given him a license bearing the photograph of the passenger and the name "Valfonso De-Witt". The Trooper called over his loudspeaker and asked for Valfonso DeWitt to respond. Defendant responded and Trooper Crawford told him that he was under arrest for criminal impersonation. His suspicions now aroused, Trooper Crawford asked DeWitt if the vehicle contained any contraband. DeWitt responded in the negative and gave Trooper Crawford permission to search the interior of the vehicle. Trooper Crawford searched and found no contraband. DeWitt then consented to allow the Trooper to search the trunk. According to Crawford, DeWitt punched a combination into a mechanism located on the driver's door and the trunk popped open. While DeWitt observed Trooper Crawford's search of the trunk, defendant waited in the front passenger seat of the Thunderbird.

Trooper Crawford observed several smaller bags in the trunk of the vehicle, as well as a large, maroon-colored Ameri-

can Tourister suitcase. The suitcase was very heavy, so Trooper Crawford did not remove it from the trunk, but asked DeWitt to open it. DeWitt said that he had to get the key. He went into the car, came back with a key, and unlocked the two side locks. The suitcase also had a combination lock. Trooper Crawford testified over defense objection that DeWitt told him that he would have to talk to defendant "about getting the combination". DeWitt conversed with defendant, then reported to Trooper Crawford that he was unable to get the combination and would have to get a screwdriver to open the suitcase. DeWitt again returned to the driver's side of the vehicle. Because DeWitt appeared to be getting "very nervous and agitated", Trooper Crawford decided to call for backup. He returned to his vehicle and observed defendant slam the trunk closed and return to the Thunderbird, which sped away. An extended high-speed chase ensued. At one point, the Thunderbird changed directions on the Thruway by making a U-turn in the median. Trooper Crawford observed the vehicle stop on a Thruway bridge which spans the Seneca River. He saw the car trunk fly open and observed the driver exit the vehicle, go to the rear of the vehicle, then return to the vehicle. Although Trooper Crawford did not see anything being tossed from the bridge, a truck driver on the Thruway also observed a car stop on the bridge. He observed a man he identified as the passenger exit the vehicle, remove something from the trunk, and throw it into the river. The vehicle sped off again, eluding the police. The vehicle was located later that day in the City of Auburn, and defendant and DeWitt were arrested soon after, walking in Auburn. The suitcase was not in the trunk of the Thunderbird. Two months later, however, a maroon American Tourister suitcase was discovered in the Seneca River, one half to three quarters of a mile downstream of the Thruway bridge. The suitcase, which was identified at trial by Trooper Crawford as the same one he observed in the trunk of the Thunderbird, contained over four ounces of cocaine and heroin.

Defendant testified on his own behalf that he had agreed to accompany DeWitt to Ohio to deliver the car to DeWitt's employer. He had no knowledge of any drugs in the trunk. He denied that he slammed the trunk before the high-speed chase and he denied throwing anything off the Thruway bridge, attributing both of those actions to DeWitt. Defendant was convicted.

■ On appeal, defendant argues that the trial court erred

by admitting the statement of DeWitt to Trooper Crawford that he had to talk with defendant to get the combination to the suitcase. We agree. The trial court admitted the statement as one made by a coconspirator in furtherance of a conspiracy. Although the statements of each coconspirator made in furtherance of the conspiracy can be admissible against all other coconspirators, the court must determine whether the admission of the statements of a coconspirator would violate defendant's right to confrontation. For the statement to be admitted, the declarant must be unavailable and the statement must bear some indicia of reliability sufficient to justify its admission, even in the absence of cross-examination *(People v Comfort,* 151 AD2d 1019, 1020, *lv denied* 74 NY2d 807; *see also, People v Sanders,* 56 NY2d 51, 64, *rearg denied* 57 NY2d 674).* Assuming that DeWitt was unavailable to testify at defendant's trial, we conclude that the second prong of the test was not satisfied. This was not a case where the statement was made to someone with whom the declarant was engaged in a joint criminal enterprise *(see, People v Sanders, supra; People v Warren,* 156 AD2d 972, *lv denied* 75 NY2d 925; *People v Comfort, supra).* Here, DeWitt, having been stopped by Trooper Crawford and having acknowledged an ownership interest in the vehicle, had a very strong motive to lie, to convince the Trooper that defendant had control over the suitcase which contained the drugs. The statement, therefore, does not bear sufficient indicia of reliability to justify its admission in the absence of cross-examination.

Because the admission of the statement violated defendant's right to confrontation, its admission was an error of constitutional dimension *(see, People v Ayala,* 75 NY2d 422, 431-432, *rearg denied* 76 NY2d 773; *People v Sanders, supra,* at 65). The test that must be applied, therefore, is whether "there is no reasonable possibility that the error might have contributed to the conviction * * * Even this highly exacting harmless-error standard, however, does not demand that guilt be proven 'indisputably' " *(People v Ayala, supra,* at 431 [citations omitted]). Here, excluding DeWitt's statement, the proof of guilt was overwhelming. Defendant was driving the vehicle when it was stopped by Trooper Crawford and he offered DeWitt's license when asked to produce his license. When Trooper Crawford returned to his vehicle to call for backup, defendant slammed the trunk shut so that he and DeWitt could flee the scene. Moreover, there was testimony which, if believed by the jury, demonstrated that defendant threw the suitcase off the

Thruway bridge into the Seneca River. In light of the over-whelming proof of defendant's guilt, the admission of DeWitt's statement was harmless *(see, People v Perez,* 175 AD2d 614, *lv denied* 78 NY2d 1014).

Defendant's second contention is that the trial court erred by instructing the jury on the presumption of knowing posses-sion in Penal Law § 220.25 (1). Defendant argues that the presumption is unconstitutional as applied to him because the drugs were in a locked suitcase inside the locked trunk of DeWitt's automobile.

█ Penal Law § 220.25 (1) provides, in relevant part, that "[t]he presence of a controlled substance in an automobile, other than a public omnibus, is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found". The statute contains three exceptions, none of which applies in this case. The Supreme Court, upholding the constitutional-ity of the identical presumption for weapons found in Penal Law § 265.15 (3), concluded that the presumption is not uncon-stitutional as applied if there is a rational connection between the known fact proven by the prosecution and the ultimate fact presumed *(Ulster County Ct. v Allen,* 442 US 140; *see also, People v Rivera,* 135 Misc 2d 766, 768). Here, there is such a rational connection. When the Thunderbird was stopped, de-fendant was behind the wheel and, according to the Trooper's testimony, the lock mechanism to open the trunk was located on the driver's door. The key to the suitcase was also inside the vehicle. Under those circumstances, it was rational to presume that defendant had both the ability and the intent to exercise dominion and control over the drugs in the trunk *(see, People v Hicks,* 138 AD2d 519, 522, *lv denied* 71 NY2d 969). Defendant further demonstrated dominion and control over the drugs when he slammed shut the lid of the trunk and jumped back into the vehicle, which sped away in an attempt to evade the police. Moreover, if the testimony of the truck driver was accepted, defendant removed the suitcase from the trunk and threw it into the river. Finally, the very large quantity of drugs being transported fairly leads to the infer-ence that they were being transported by drug traffickers *(see, People v Rivera, supra,* at 768).

█ Upon our review of the record, we conclude that the evidence was sufficient to support the verdict and that the verdict was not against the weight of the evidence. Trooper Crawford identified the suitcase as the same one he observed

in the trunk of the Thunderbird, describing its color, the brand of luggage, and the fact that the two side locks were unlocked. Trooper Crawford's identification of the suitcase, combined with the evidence that the suitcase was discovered in the Seneca River one half to three quarters of a mile downstream from the Thruway bridge, was sufficient to prove that the suitcase was the same one that was in the trunk of the Thunderbird.

The evidence was likewise sufficient to support the jury's determination that defendant knowingly possessed the drugs in the trunk. The jury was properly instructed concerning the statutory presumption of knowing possession of drugs by all the occupants of a vehicle in which drugs are found. Moreover, defendant was driving the vehicle and had access to the lock which opened the trunk. Defendant was observed slamming down the lid of the trunk to enable him and DeWitt to flee the scene. That evidence supports the finding that defendant knowingly possessed the drugs in the suitcase. Although defendant testified that he had no knowledge of the contents in the trunk of the Thunderbird, that testimony presented an issue of credibility for the jury to resolve (see, *People v Bleakley,* 69 NY2d 490, 495; *People v Faulk,* 137 AD2d 830, 831).

■ Defendant argues that two instances of prosecutorial misconduct deprived him of a fair trial. Defendant did not object to the prosecutor's remarks, so he has not preserved for review his present argument. In his opening statement, the prosecutor referred to defense counsel's remarks to the jurors during voir dire wherein he asked them not to "hold it against" defendant that defendant was black. The prosecutor stated: "I will tell you right off the bat, I think that is a smoke screen. In fact, the arresting officer in this case is a black officer." That comment was improper because it encouraged the jury to base determinations of credibility on the racial similarity or dissimilarity of the witnesses (see, *People v Watson,* 111 AD2d 774; *People v Green,* 89 AD2d 874; *People v Burney,* 20 AD2d 617; *People v Hearns,* 18 AD2d 922, 923). Moreover, on cross-examination the prosecutor asked an improper question designed to imply that it was unlikely that black men would walk in an unknown white area of the City of Auburn. Although we do not condone the prosecutor's attempts to appeal to the possible racial bias of jurors, we decline to reverse the conviction in the interest of justice. The comments were isolated and did not amount to a persistent

pattern of racial references *(see, People v Ali,* 158 AD2d 460, *lv denied* 76 NY2d 784; *People v Watson, supra; cf., People v Thomas,* 129 AD2d 596).

■ The trial court did not err by allowing court officers to accompany a deliberating juror who lived alone to her home to retrieve required heart and cancer medication before returning her to the hotel where the jury was sequestered for the evening *(see, People v Russell,* 179 AD2d 521, *lv denied* 79 NY2d 952). We have examined defendant's remaining argument and find it lacking in merit.

Accordingly, the judgment of conviction should be affirmed.

GREEN, J. P. (dissenting). The presumption of knowing possession set forth in Penal Law § 220.25 (1) should not have been charged in this case. A criminal statutory presumption may be constitutionally applied only if "there is a 'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed" *(Ulster County Ct. v Allen,* 442 US 140, 165, quoting *Tot v United States,* 319 US 463, 467). A rational connection between proven facts and facts that the jury is permitted to infer from them depends upon a "substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend" *(Leary v United States,* 395 US 6, 36; *see also, Ulster County Ct. v Allen, supra,* at 165-166). In upholding the constitutionality of the presumption of knowing possession authorized by Penal Law § 220.25 (1), the Court of Appeals explained New York's stricter standard, which requires that "the connection must assure 'a reasonably high degree of probability' that the presumed fact follows from those proved directly" *(People v Leyva,* 38 NY2d 160, 166, quoting *People v McCaleb,* 25 NY2d 394, 404).

The use of the statutory presumption in the instant case fails to meet even the less exacting constitutional standard established by the Supreme Court. The jury was instructed that it was permitted to infer, solely from the presence of drugs in the automobile, that the drugs were knowingly possessed by defendant. In our view, however, there is no substantial assurance that the presumed fact, defendant's knowing possession of cocaine and heroin, is more likely than not to flow from the proved fact that cocaine and heroin were present in the automobile. The drugs were in a locked suitcase in the automobile trunk. Defendant did not own the automobile. Although defendant was driving the vehicle when it was

stopped, there is no indication that he had access to the trunk of said automobile (cf., People v Hicks, 138 AD2d 519, 522, lv denied 71 NY2d 969). The evidence established that only DeWitt had the combination to open the trunk. Further, the evidence does not support a finding that defendant had access to the contents of the locked suitcase. DeWitt, not defendant, produced the key to the suitcase. The only evidence indicating that defendant had control over the locked suitcase was the inadmissible hearsay statement of DeWitt to Trooper Crawford. Absent any evidence that defendant had access to the trunk or the suitcase, there is no rational connection between the presence of drugs in the vehicle and defendant's knowing possession (see, People v Wilt, 105 AD2d 1089; People v Ballard, 133 Misc 2d 584, 590-591).

Evidence that defendant slammed the trunk shut to commence the high-speed chase and that he threw the suitcase into the river does not support the application of the statutory presumption. The majority's reliance on that evidence ignores the fact that the jury was specifically instructed that it could infer defendant's knowing possession solely from the presence of drugs in the automobile at the time of the stop by Trooper Crawford. The proof concerning defendant's conduct following the stop may be relevant to defendant's constructive possession of the drugs or to his liability as an accessory for aiding DeWitt. It does not, however, provide a rational basis for concluding that defendant exercised dominion and control over the drugs simply because the drugs were located in the trunk of the automobile in which he was riding. The presumption authorized by the statute, as reflected in the court's charge, permitted the jury to infer defendant's knowing possession solely from the presence of drugs in the vehicle. By charging the statutory presumption, the court invited the jury to rely on the inference of possession flowing from defendant's presence in the vehicle rather than to resolve the sharply conflicting evidence relating to defendant's constructive possession of the drugs. Because defendant's knowing possession could be presumed at the time of the stop, the jury could find defendant guilty regardless of whether it accepted defendant's testimony, supported by Trooper Crawford, that DeWitt threw the suitcase over the bridge or the truck driver's testimony that defendant removed something from the trunk and threw it into the river. In short, the evidence concerning defendant's conduct during the chase is not relevant to the issue whether

his knowing possession of drugs is more likely than not to flow simply from the presence of drugs in the vehicle.

We also believe that the prosecutor's highly improper attempts to appeal to racial prejudice warrant reversal in the interest of justice (see, CPL 470.15 [6] [a]). The prosecutor's suggestion that Trooper Crawford was not likely to lie against defendant because both are African-Americans offends due process (see, People v Thomas, 129 AD2d 596; People v Burney, 20 AD2d 617; McFarland v Smith, 611 F2d 414). The prosecution's case rested almost entirely on the testimony of Trooper Crawford, and the prosecutor's attempt to enhance his credibility by interjecting racial prejudice requires reversal (see, McFarland v Smith, supra).

Because we believe that the presumption of knowing possession is arbitrary and irrational when applied to the instant case, and that the improper racial remarks by the prosecutor violated defendant's rights to due process, we would reverse the conviction and grant a new trial.

PINE and BOEHM, JJ., concur with DOERR, J.; GREEN, J. P., dissents and votes to reverse and grant a new trial in a separate opinion in which FALLON, J., concurs.

Judgment affirmed.