Otis GLENN, a/k/a Sammy McBride, Petitioner–Appellant,

v.

George BARTLETT, Superintendent of Elmira Correctional Facility, Respondent–Appellee.

No. 83, Docket 95–2807.

United States Court of Appeals, Second Circuit.

Argued Sept. 6, 1996.

Decided Oct. 24, 1996.

722

Howard K. Broder, Rochester, NY, for Petitioner–Appellant.

Frank K. Walsh, Albany, NY, Assistant Attorney General of the State of New York (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Peter G. Crary, Assistant Attorney General, of Counsel), for Respondent–Appellee.

Before: FEINBERG, CARDAMONE and McLAUGHLIN, Circuit Judges.

FEINBERG, Circuit Judge:

Petitioner Otis Glenn appeals from an order entered in November 1995 in the United States District Court for the Northern District of New York, Con G. Cholakis, J., dismissing his habeas petition pursuant to 28 U.S.C. § 2254. Glenn asserts that the district court erred in holding that his challenges to racial statements made by the prosecution during his state trial and to application of New York's "automobile pre-

sumption" for possession of drugs were both procedurally barred on habeas review. He further challenges the district court's holding that admission of a statement made by his coconspirator did not violate the Confrontation Clause of the Sixth Amendment. For reasons set forth below, we affirm.

## I. Facts and Prior Proceedings

In June 1989, Glenn and Valfonso DeWitt were stopped on the New York State Thruway by New York State Trooper Jerome Crawford for failure to display a rear license plate. Glenn, the driver at this point, explained to Crawford that he was accompanying DeWitt on a trip to Ohio to deliver DeWitt's employer's car. When Glenn produced a license showing DeWitt's picture, Crawford became suspicious, returned to his car and called out "DeWitt" over his loudspeaker. When Glenn stepped out of the car in response, Crawford arrested him for criminal impersonation.

Crawford next ordered DeWitt out of the car and received permission to search the vehicle. Crawford asked DeWitt to open a heavy suitcase located inside the trunk. Although DeWitt unlocked one of the suitcase's two locking mechanisms, he told Crawford that he would "have to talk to Otis Glenn about getting the combination for the suitcase."

Crawford testified that as he returned to his patrol car to call for backup assistance, he saw Glenn get out of the car, slam the trunk, and reenter the car, which sped off with DeWitt driving. During the ensuing high-speed chase, Crawford saw the car stop on a Thruway bridge; an observer driving over the bridge testified at trial that he saw the passenger—appellant Glenn—throw something from the trunk into the river below.

Later that day, police apprehended Glenn and DeWitt walking around the town of Auburn, where they had abandoned the car. Two months later, police recovered from a section of the Seneca River not far downstream from the Thruway bridge a suitcase that Crawford identified as the one found in DeWitt's trunk. The suitcase contained over four ounces of cocaine and heroin, drug paraphernalia and two guns. In September 1991, Glenn was convicted after a jury trial in Cayuga County Court of criminal possession of a controlled substance in the first degree. He is presently serving his sentence of twenty-five years to life imprisonment.[1]

On appeal to the New York State Appellate Division, Fourth Department, Glenn argued, among other things, that: (1) racial statements by the prosecutor during the trial violated due process; (2) the automobile presumption applied by the New York trial court, which allows a jury to presume knowing possession by any passenger in a car of drugs found in the car, is unconstitutional as applied in this case; and (3) admission through Crawford's testimony of DeWitt's statement about the lock combination violated Glenn's constitutional right to confrontation under state and federal law. The Appellate Division affirmed Glenn's conviction in a three-two decision. *People v. Glenn*, 185 A.D.2d 84, 592 N.Y.S.2d 175 (N.Y.App.Div. 1992). Justice Green, one of the dissenters, thereafter denied both Glenn's motion for leave to appeal to the New York Court of Appeals, and his motion for reconsideration of that denial.

In November 1993, Glenn filed his federal habeas petition. Although Magistrate Judge David N. Hurd recommended that the petition be granted based on what he believed to be the "cumulative effect" of constitutional violations in the state trial, District Judge Cholakis refused to adopt the recommendations. Instead, the district judge held that he was procedurally barred from reviewing Glenn's habeas claims with respect to prosecutorial racial statements and the automobile presumption because the Appellate Division had ruled that Glenn had not properly preserved these issues for appellate review. Additionally, the judge held that DeWitt's statement was properly admissible non-hear-

---

1. At the time of Glenn's trial, a warrant remained outstanding for DeWitt's arrest. Glenn was consequently tried alone.

say under federal constitutional standards. Glenn now challenges each of these holdings.

## II. Racial Statements

■ Glenn claims that two statements made by the prosecutor during the trial violated due process by encouraging the jury to decide his case on the basis of improper racial considerations. First, after Glenn's attorney asked the jury in his opening not to base its verdict on the fact that Glenn is black, the prosecutor countered in his opening that the statement of Glenn's attorney was "a smoke screen. In fact, the arresting officer in this case [Trooper Crawford] is a black officer." Later, during cross-examination of Glenn, the prosecutor questioned Glenn's reasons for abandoning the car and walking around Auburn after being pursued by the police, asking, "Two black men that don't know anything about the Auburn area and you just start walking?" Glenn argues that these racial comments were inappropriate and made without legitimate justification, thus violating his due process right to a fair trial. Without reaching the merits, the district court held that under the governing law, Glenn was "procedurally barred" from raising this issue in federal court.

■ In *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court reaffirmed the well-settled principle that when a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750, 111 S.Ct. at 2565; see also *Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 2593–94, 115 L.Ed.2d 706 (1991); *Epps v. Comm'r of Correctional Servs.,* 13 F.3d 615, 617–18 (2d Cir.), cert. denied, —— U.S.

——, 114 S.Ct. 1409, 128 L.Ed.2d 81 (1994). However, procedural default in the state court will only bar federal habeas review when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (internal quotations omitted); *Levine v. Comm'r of Correctional Servs.,* 44 F.3d 121, 126 (2d Cir.1995). A federal habeas court determines whether the state court judgment rests on such an independent and adequate ground. *Coleman,* 501 U.S. at 736, 111 S.Ct. at 2557–58.

Glenn argues, and the Magistrate Judge agreed, that the Appellate Division's discussion of the merits with mere "mention" of the procedural default indicates that the decision was based on the merits. We disagree. In its opinion, the Appellate Division clearly stated that Glenn "did not object to the prosecutor's [racial] remarks, so he has not preserved for review his present argument."[2] *People v. Glenn,* 185 A.D.2d at 90, 592 N.Y.S.2d 175. The court then went on, however, to discuss the merits of the due process claim, holding that "[a]lthough we do not condone the prosecutor's attempts to appeal to the possible racial bias of jurors, we decline to reverse the conviction in the interest of justice." *Id.*

This court has held that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990); *Harris,* 489 U.S. at 264 n. 10, 109 S.Ct. at 1044 n. 10 ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding."); *Wedra v. Lefevre,* 988 F.2d 334, 338–39 (2d Cir.1993).

Acknowledging this principle, Glenn argues that the Appellate Division did not "tru-

---

**2.** Under New York law, an issue is properly preserved for appeal as a matter of law only if the appellant objected on that ground in the trial below. *People v. Cona,* 49 N.Y.2d 26, 33–34, 424 N.Y.S.2d 146, 399 N.E.2d 1167 (1979); see N.Y.Crim.Proc.Law § 470.05(2) and Practice

Commentaries at 9–10. However, the Appellate Division may, as a matter of discretion, rule on a forfeited claim "in the interest of justice." See N.Y.Crim.Proc.Law § 470.15(6). Glenn concedes that he did not object to the racial statements at trial.

ly" rule in the alternative. Glenn correctly observes that in *Velasquez*, after stating that the "issue [was] not preserved for appellate review," the Appellate Division prefaced its discussion of the merits of the claims by stating that "in any event" and "in any case" they were without merit. *People v. Velasquez*, 141 A.D.2d 882, 883, 530 N.Y.S.2d 208 (N.Y.App.Div.1988). Glenn argues that the Appellate Division in this case did not similarly make clear that its holding on the merits was an alternative holding. However, to require a state court to use specific talismanic phrases when ruling in the alternative would be undue formalism; it would also intrude on the state court's autonomy without advancing the federalism and comity interests protected by the independent and adequate state grounds doctrine. Indeed, the Supreme Court in *Coleman* declined to "impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim ... in order that federal courts might not be bothered with reviewing state law and the record in the case." *Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559.

Glenn counters that the Appellate Division did not rely on procedural default at all, but rather that its review of the merits of his prosecutorial misconduct claim to determine whether to exercise its "interests of justice" jurisdiction actually "waived" the procedural bar. The logic of Glenn's argument would allow federal habeas review every time the Appellate Division explored the merits of a forfeited claim under its discretionary "interest of justice" power. We decline to adopt such a rule. See *Vera v. Hanslmaier*, 928 F.Supp. 278, 285 (S.D.N.Y.1996) (holding federal habeas claims barred when the Appellate Division ruled that " 'with respect to defendant's remaining claims, both of which are wholly unpreserved, reversal is not warranted in the interest of justice,' and then explained why that was so"). We do not agree that by discussing the merits of Glenn's claim, the Appellate Division waived the procedural bar it clearly invoked earlier

in its opinion. The prosecutor's racial statements might better have been left unsaid, but federal habeas review of them is precluded because the Appellate Division's decision rested on an independent and adequate state ground.

## III. New York Automobile Presumption

■ Glenn next argues that the New York statute deeming the presence of drugs in an automobile "presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found," N.Y.Penal Law § 220.25[1], is unconstitutional as applied to him on the facts of his case. At trial, Glenn testified that he had no knowledge that drugs were being transported in the trunk of DeWitt's employer's car. He also testified that DeWitt, not he, slammed the car's trunk before it sped away from Officer Crawford and threw the suitcase of drugs into the river. Thus, Glenn asserts that the evidence does not show the required "rational connection" between the basic facts proved and the presumed fact—knowing possession of the drugs. See *County Court of Ulster County v. Allen*, 442 U.S. 140, 165, 99 S.Ct. 2213, 2228–29, 60 L.Ed.2d 777 (1979).

Again, we must first determine whether the district court correctly held that this habeas claim is barred by Glenn's admitted failure to raise it during his trial. The Appellate Division in a split decision held that the automobile presumption as applied to the facts of Glenn's case did not violate his constitutional rights; neither the majority nor the dissent mentioned Glenn's procedural default at trial. Thereafter, Justice Green (one of the dissenters) denied Glenn's motion for leave to appeal to the New York Court of Appeals and his motion to reargue such denial. Although the first denial was without opinion, Justice Green's order denying rehearing stated that as a matter of state law no appeal could be taken because Glenn had "failed to preserve the issue for appellate review" by not objecting at trial.[3]

---

**3.** New York law strictly prohibits the Court of Appeals from reviewing claims not raised properly in the trial court, even when the Appellate Division has reached the issue in the interests of

justice. See N.Y.Crim.Proc.Law § 450.90(2) and Practice Commentaries at 739–40. Although an extremely narrow exception has been recognized for errors that create "fundamental irregularities

Glenn argues that because the Appellate Division did not mention procedural default with regard to this issue in its opinion affirming his conviction, that default does not constitute an independent and adequate state ground barring habeas review. Although Justice Green's second order specifically rested on procedural default, Glenn asserts that the order cannot be considered the last state "judgment" under *Harris* for purposes of evaluating whether the last state court to pass on his claim rested on procedural default. See *Ylst*, 501 U.S. at 805–06, 802 n. 2, 111 S.Ct. at 2595–96, 2594 n. 2 (noting that the California Supreme Court's unexplained discretionary denial of review did not constitute a "judgment"). Instead, Glenn submits that this court should look to the Appellate Division's full opinion, which does not mention the procedural default, and find that the state judgment rested on reviewable federal grounds. The State counters that, consistent with *Ylst*, precedent from this circuit supports the argument that the procedural bar first raised in Justice Green's second order constitutes an independent and adequate state ground. See *Wedra*, 988 F.2d at 339 (holding that one-judge order denying as untimely petitioner's motion for leave to appeal constitutes adequate state ground barring habeas review).

The question is not a simple one. We can obviously presume that Justice Green knew the actual basis for the Appellate Division's decision, even though he dissented from its opinion. And *Wedra* does offer support for the State's position even though the case is distinguishable. However, Justice Green's order does not clearly state that the Appellate Division's judgment rested on an independent and adequate procedural ground. Rather, his order correctly states that New York law prevents *further* review by the Court of Appeals due to Glenn's failure to object at trial to the automobile presumption jury charge. The issue whether Glenn's procedural default bars habeas review thus turns on the proper weight to be given to

Justice Green's order in determining the actual ground for the state court's judgment.

Although both parties offer sufficiently persuasive interpretations of *Ylst* to make the question a close one, we do not consider further discussion of the issue fruitful because we are convinced that, on the merits, the automobile presumption as applied here does not violate due process. As this court has recognized, New York's permissive automobile presumption is constitutional, at least as applied to " 'dealership' " quantities of drugs. *Lopez ex rel. Garcia v. Curry*, 583 F.2d 1188, 1191–92 (2d Cir.1978) (one kilogram of cocaine); *Bellavia v. Fogg*, 613 F.2d 369, 372 (2d Cir.1979) (31 ounces of cocaine). Glenn does not challenge the Appellate Division's characterization of the over four ounces of cocaine and heroin involved here as a "very large quantity of drugs" that supports an "inference that they were being transported by drug traffickers." *People v. Glenn*, 185 A.D.2d at 89, 592 N.Y.S.2d 175.

Analyzing New York's similar presumption for possession of weapons found in an automobile, the Supreme Court has held that a permissive presumption—one that permits but does not require the jury to find the presumed fact—satisfies due process if, as applied in the particular case, there is a " 'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is 'more likely than not to flow from' the former." *Ulster*, 442 U.S. at 165, 99 S.Ct. at 2228–29. The Court explained that "[a]s long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt, it need only satisfy the [rational connection] test." *Id.* at 167, 99 S.Ct. at 2230; see also *United States v. Curcio*, 712 F.2d 1532, 1540–41 (2d Cir.1983) (stressing the need to examine all the evidence presented to the jury to determine the constitutionality of a permissive presumption); *Young v. Abrams*, 698 F.2d 131, 136–37 (2d Cir.1983) (applying *Ulster* test to obscenity presumption).

in a criminal prosecution," see *People v. Udzinski*, 146 A.D.2d 245, 248–252, 541 N.Y.S.2d 9 (N.Y.App.Div.1989) (citing cases), this exception does not apply to claims relating to jury charges

on presumptions. *People v. Thomas*, 50 N.Y.2d 467, 473, 429 N.Y.S.2d 584, 407 N.E.2d 430 (1980).

Glenn argues that application of the automobile presumption violated due process because the jury was instructed that it could rely solely on the presence of the drugs in the automobile. See *Glenn*, 185 A.D.2d at 91–93, 592 N.Y.S.2d 175 (Green, J., dissenting). In *Ulster*, the Supreme Court focused on the content of the jury charge in evaluating the constitutionality of the presumption as applied in that case. 442 U.S. at 160–63, 99 S.Ct. at 2226–28. The Court rejected the dissent's argument that the charge violated due process because the jury was effectively told that it could rely on the presumption alone—even if it disbelieved all of the prosecution's other evidence. See *id.* at 176 n. 8, 174–77, 99 S.Ct. at 2234 n. 8, 2233–35 (Powell, J., dissenting) ("[W]e are not free, as the Court apparently believes, to disregard the possibility that the jury may have disbelieved all other evidence supporting an inference of possession.") The majority deemed it sufficient that "the jury was plainly told that it was free to disregard the presumption." *Id.* at 166 n. 29, 99 S.Ct. at 2229 n. 29.

■ In the present case, the jury was properly instructed that "after consideration of all the evidence in the case" it could presume knowing possession of the drugs. Moreover, the judge repeatedly instructed the jurors that they could reject entirely such presumption or inference. In addition, the judge specifically reminded the jurors that the presumption did not shift from the prosecution the burden of proof beyond a reasonable doubt on all elements of the crime. Cf. *Lopez ex rel. Garcia*, 583 F.2d at 1193. We find the charge here to be consistent with the principles articulated in *Ulster* with respect to permissive presumptions.

We hold that a rational connection between the proven facts and the presumed knowing possession of drugs exists in this case. First, Trooper Crawford's testimony that Glenn had access to the trunk locking mechanism and the key to the suitcase, both located inside the vehicle, supports the inference that Glenn had the "ability and the intent to exercise dominion and control" over the drugs in the suitcase. *Ulster*, 442 U.S. at 164–65, 99 S.Ct. at 2228; see *People v. Hicks*, 138 A.D.2d 519, 522, 526 N.Y.S.2d 127 (N.Y.App.Div.1988). Moreover, testimony at trial concerning Glenn's behavior during the police stop reinforces the presumed fact that Glenn knowingly possessed the drugs hidden in the suitcase. Crawford testified that immediately before DeWitt's car sped away, Glenn got out and slammed the trunk, enabling the two men to drive away. Finally, an eyewitness testified that when the car stopped on the bridge in mid-chase, Glenn got out and threw a large bag into the river. The jury rationally could have found, despite Glenn's contradictory testimony, that Glenn undertook these dangerous actions because he had full knowledge of the presence of the drugs in the trunk and sought to conceal them from the police.

## IV.  Confrontation Clause

Glenn's final argument is that the admission of DeWitt's statement that he would "have to talk to Otis Glenn about getting the combination" needed to open the suitcase violated the federal Confrontation Clause. Glenn objected to the statement at trial, but the trial judge allowed it into evidence

on the basis that the evidence is clear that this was a conspiracy to transport or possess drugs. In such a situation, the conspiracy was still in progress and the testimony or statements of any of the conspirators during the course of the conspiracy are admissible against any other conspirators.

On direct appeal, the Appellate Division found the statement improperly admitted, apparently because, under state law, it was hearsay which did "not bear sufficient indicia of reliability." *People v. Glenn*, 185 A.D.2d at 88, 592 N.Y.S.2d 175. That court held, however, that the error was harmless in light of the "overwhelming" proof of Glenn's guilt. *Id.* at 89, 592 N.Y.S.2d 175.

On habeas review, the Magistrate Judge stated in his recommendation that DeWitt's statement violated the federal Confrontation Clause because it did not fall within any exception in the Federal Rules of Evidence and the reliability of the hearsay statement was "suspect." The district court, however, declined to adopt the recommendation, holding instead that the statement was admissi-

ble nonhearsay under *Bourjaily v. United States,* 483 U.S. 171, 182–84, 107 S.Ct. 2775, 2782–83, 97 L.Ed.2d 144 (1987), because made in furtherance of a conspiracy under Fed.R.Evid. 801(d)(2)(E).

■ Glenn argues that the statement does not fall within the coconspirator exception of the Rule, which provides that "[a] statement is not hearsay if [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." To admit a statement pursuant to the Rule, the court must find that (1) there was a conspiracy, (2) its members included the declarant and the party against whom the statement is offered, and (3) the statement was made during the course of and in furtherance of the conspiracy. *United States v. Rivera,* 22 F.3d 430, 435–36 (2d Cir.1994). In *Bourjaily,* the Supreme Court squarely rejected the notion that the federal Constitution requires a showing of independent indicia of reliability with respect to statements admitted pursuant to the "firmly rooted" coconspirator exception. 483 U.S. at 182–83, 107 S.Ct. at 2782.

■■ As an initial matter, Glenn argues that the state court did not make a proper predicate finding of conspiracy to justify admission under Fed.R.Evid. 801(d)(2). Under federal law, which governs Glenn's § 2254 habeas claims, a trial court need only find by a preponderance of the evidence that a conspiracy existed, a factual finding which we will not disturb absent clear error. *United States v. Orena,* 32 F.3d 704, 711 (2d Cir. 1994). We agree with the State that the trial judge was presented with sufficient evidence from which he could—and did—determine that a "conspiracy to transport or possess drugs" had been formed between Glenn and DeWitt. In finding a conspiracy, the trial judge could properly rely on any evidence available to him, including the hearsay statement itself, *United States v. Brooks,* 82 F.3d 50, 53–54 (2d Cir.), cert. denied, —— U.S. ——, 117 S.Ct. 267, 136 L.Ed.2d 191 (1996); *United States v. Tellier,* 83 F.3d 578, 580 (2d Cir.1996), and evidence of concerted efforts by the two men to deceive and evade the police in order to dispose of the incriminating

drugs. In light of all of the facts, we cannot say that the finding of conspiracy was clearly erroneous.

■■ Glenn next argues that even if a conspiracy was properly found, the statement, made when DeWitt had an incentive to shift responsibility for the drugs from himself onto Glenn, was not made "in furtherance of" the conspiracy. A statement is made in furtherance of a conspiracy if "designed to promote or facilitate achievement of the goals of that conspiracy." *Rivera,* 22 F.3d at 436. This factual determination will not be reversed unless clearly erroneous. *United States v. Rahme,* 813 F.2d 31, 36 (2d Cir.1987). Glenn considers the Appellate Division's observation that "[t]his was not a case where the statement was made to someone with whom the declarant was engaged in a joint criminal enterprise," *People v. Glenn,* 185 A.D.2d at 88, 592 N.Y.S.2d 175, to be a factual finding that the statement did not further the conspiracy. This argument, however, confuses the Appellate Division's reliability inquiry under *state* law with the required analysis under the federal Confrontation Clause. As the district court correctly noted in dismissing Glenn's habeas petition, even if admission of DeWitt's statement violated New York law—which unlike federal law requires independent indicia of reliability for a co-conspirator's statement—the statement does not offend the federal Confrontation Clause if it falls within Rule 801(d)(2)'s co-conspirator exception. Thus, the Appellate Division's apparent belief that DeWitt's statement was unreliable because made to a law enforcement officer rather than to a co-conspirator does not control our resolution of Glenn's federal constitutional claim on habeas review.

Indeed, this court has held that "there is no requirement [under Rule 801(d)(2) ] that the person to whom the statement is made also be a member" of the conspiracy. *United States v. Beech–Nut Nutrition Corp.,* 871 F.2d 1181, 1199 (2d Cir.), cert. denied sub nom., *Lavery v. United States,* 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989) (admitting statements by co-conspirator employees to a former, uninvolved employee that were intended to "cover up" their illegal acts). A

statement can further a conspiracy when uttered to a "person who is not a member of the conspiracy in a way that is designed to help the co-conspirators to achieve the conspiracy's goals." *Rivera*, 22 F.3d at 436. Here, the State argues that DeWitt's statement furthered the conspiracy to transport drugs because it was intended to prevent Officer Crawford from discovering the drugs in the suitcase by "buying them time," thus facilitating their escape from this unwanted police attention. Under these circumstances, we cannot say that characterizing the statement as in furtherance of the conspiracy to transport drugs was clearly erroneous.

In any event, even assuming that admitting the statement violated the federal Confrontation Clause, we will only grant a habeas petition if the petitioner establishes that "the error had a 'substantial and injurious effect or influence in determining the jury's verdict.' " *Headley v. Tilghman*, 53 F.3d 472, 474 (2d Cir.) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993)), cert. denied, — U.S. ——, 116 S.Ct. 207, 133 L.Ed.2d 140 (1995). The most dispositive factor in this analysis is the overall strength of the prosecution's case. *Latine v. Mann*, 25 F.3d 1162, 1167–68 (2d Cir.1994), cert. denied, — U.S. ——, 115 S.Ct. 1319, 131 L.Ed.2d 200 (1995). The Appellate Division considered the evidence supporting Glenn's conviction to be "overwhelming" even without DeWitt's statement, *People v. Glenn*, 185 A.D.2d at 89, 592 N.Y.S.2d 175, but we need not go that far. It is enough if we believe (as we do) that, DeWitt's statement notwithstanding, Glenn's conviction was based on "weighty" evidence. *Samuels v. Mann*, 13 F.3d 522, 527–28 (2d Cir.1993), cert. denied, — U.S. ——, 115 S.Ct. 145, 130 L.Ed.2d 85 (1994).

As discussed above, the other evidence at trial amply supports Glenn's conviction for knowing possession of the drugs. The State introduced independent evidence of Glenn's suspicious and deceptive behavior during and after the police stop from which knowing possession of the drugs could be presumed. A jury reasonably could have believed that Glenn's actions during the incident signified his knowing, active participation in the illegal drug offense. Combined with reliance on New York's automobile presumption, the evidence as a whole demonstrates that admission of DeWitt's statement was harmless.

We affirm the judgment of the district court.