(April 22, 1999)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDRE ALEXANDER, Appellant. [690 NYS2d 146] —Yesawich Jr., J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered January 7, 1998, upon a verdict convicting defendant of the crime of criminal possession of a weapon in the third degree.

At approximately 2:30 A.M. on January 25, 1997, Andrew Washington, an off-duty correction officer, was in his vehicle at the intersection of South Pearl Street and Madison Avenue in the City of Albany when he observed an altercation involving 25 to 30 individuals. While waiting for the crowd to disperse, Washington heard a gunshot and, looking in its direction, witnessed a man holding a handgun. Based upon Washington's identification testimony, as well as other evidence, a jury

convicted defendant of criminal possession of a weapon in the third degree. This appeal followed.

During her summation, the prosecutor suggested to the jury that Washington's identification was "more reliable" because both he and defendant were "Afro-Americans". We reject defendant's claim that County Court committed reversible error by not sustaining defendant's timely objection to this remark. Admittedly, the prosecutor's reference to the fact that its principal witness and defendant were both "Afro-Americans" was improper (*see, People v Williams*, 40 AD2d 812; *People v Burris*, 19 AD2d 557), and County Court, rather than condoning it, should have sustained the objection and given a curative instruction. That having been said, however, a reversal is not dictated. Reversal is warranted where there is "a persistent pattern of racial references", the single isolated comment, uttered here, is not enough to justify overturning the jury's determination (*People v Glenn*, 185 AD2d 84, 90-91, *cert denied* 520 US 1108; *see, People v Ali*, 158 AD2d 460, *lv denied* 76 NY2d 784; *compare, People v Thomas*, 129 AD2d 596). Moreover, in view of the totality of the evidence, the error was not so prejudicial as to preclude an affirmance (*see, People v Dien*, 161 AD2d 195, 196, *affd* 77 NY2d 885; *People v Williams, supra*, at 813).

On this record, the jury could have found Washington's identification testimony eminently credible. Washington recounted that when the incident occurred the street lights, as well as his truck headlights, provided sufficient illumination to see—and defendant does not contend otherwise—what transpired, and that upon hearing the gunshot, he looked to his right and saw defendant backing away, holding in his hand a .45-caliber weapon. It is also noteworthy that Washington stated that he looked "dead at defendant" and did so long enough (and was close enough) to notice that the gun's slide was pushed back, denoting that it was either out of ammunition or jammed. City of Albany Police subsequently found a .45-caliber shell casing that bore markings which indicated that it had been fired. Upon leaving the scene, Washington immediately reported the incident at a nearby police precinct and then returned to the area in the company of Albany Police Officer Stephen Dorn. There, according to Dorn, Washington spontaneously identified defendant among a group of people standing outside a local bar and told Dorn that he was the gunman. Dorn related that defendant's appearance matched the description of the person Washington had previously furnished of the man with the gun.

Furthermore, when interviewed by Detective Ronald Matos as to his involvement in the shooting, defendant's responses were evasive and disingenuous. Initially he told Matos that he had not even been at the scene but then, after admitting that he had in fact been present, asserted that he neither fired a gun nor heard one fired. Still later, defendant acknowledged that there might be gun powder on his person because he was standing next to the one who did the shooting. Ultimately, defendant told Matos that the gun fired that evening was a silver .45-caliber weapon, that he knew where the gun was and that he would retrieve it if they needed it. In sum, the evidence of defendant's guilt is compelling.

As for any error occasioned by the prosecutor commenting on defendant's failure to offer any scientific evidence, that was remedied by County Court which sustained the objection and promptly reminded the jury that defendant was not obliged to provide any evidence.

Spain, Carpinello and Graffeo, JJ., concur.

Mikoll, J. P., (dissenting). I respectfully dissent.

The prosecutor improperly urged the jury to infer that the People's sole eyewitness could not have erred in his identification of defendant since both were African-Americans. Arguments which encourage jurors to weigh testimony on the basis of racial similarity are inherently improper (*see, People v Williams*, 40 AD2d 812; *People v Burris*, 19 AD2d 557) and have warranted reversal even in the absence of an objection thereto (*see, People v Thomas*, 129 AD2d 596). Such remarks offend "the democratic and logical principle that race, creed or nationality, in themselves, provide no reason for believing or disbelieving a witness's testimony" (*People v Hearns*, 18 AD2d 922, 923). Here, County Court not only failed to recognize the impropriety, but exacerbated it by overruling defendant's objection and commenting, "It's an inference she seeks." I do not share the majority's sanguine view that the impropriety was harmless. The testimony of the witness in question was crucial upon the question of identification, and its improper and prejudicial bolstering was extraordinarily damaging to the defendant.

I also consider improper the prosecutor's comment in summation concerning defendant's failure to present any scientific evidence despite having called witnesses (*see, People v Proper*, 177 AD2d 863, *lv denied* 79 NY2d 922; *People v Ortiz*, 116 AD2d 531). Although she at the same time acknowledged that the defense has no burden of proof, the gratuitous remark implicitly advanced a contrary argument. "The State is not so

short of grist for its criminal mill that it must absorb convictions" obtained in flawed proceedings (*People v Flowers*, 30 NY2d 315, 319). I would reverse and grant defendant a new trial.

Ordered that the judgment is affirmed.