People v Myles (2023 NY Slip Op 02415)

People v Myles

2023 NY Slip Op 02415

Decided on May 5, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 5, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, BANNISTER, AND OGDEN, JJ.

155 KA 19-00115

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
TYSHON MYLES, DEFENDANT-APPELLANT. 

THE ABBATOY LAW FIRM, PLLC, ROCHESTER (DAVID M. ABBATOY, JR., OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MARTIN P. MCCARTHY, II, OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Judith A. Sinclair, J.), rendered December 3, 2018. The judgment convicted defendant upon a jury verdict of murder in the second degree, kidnapping in the first degree, burglary in the first degree, robbery in the first degree, robbery in the second degree and tampering with physical evidence. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [3]), kidnapping in the first degree (§ 135.25 [3]), burglary in the first degree (§ 140.30 [4]), robbery in the first degree (§ 160.15 [4]), robbery in the second degree (§ 160.10 [1]) and tampering with physical evidence (§ 215.40 [2]). Before trial, defendant sought suppression of various pieces of evidence, including his statements to law enforcement, identification testimony and evidence obtained as a result of numerous search warrants. We conclude that Supreme Court properly rejected all of defendant's challenges.
Defendant contends that he was arrested without probable cause and, as a result, any statements he made and physical items taken from him upon his arrest should have been suppressed. He further contends that the search warrants were not supported by probable cause. Those contentions lack merit. Both the arrest and the search warrants were supported by the requisite probable cause, which was established by, inter alia, hearsay information provided by a confidential informant (CI) and evidence gathered during the police investigation, including location data obtained from defendant's ankle monitor.
"Where hearsay information forms at least in part the basis for probable cause, the information must satisfy the two-part Aguilar-Spinelli test requiring a showing that the informant is reliable and has a basis of knowledge for the information imparted" (People v Monroe, 82 AD3d 1674, 1675 [4th Dept 2011], lv denied 17 NY3d 808 [2011] [internal quotation marks omitted]). As we determined in the appeal of a codefendant (People v Colon, 192 AD3d 1567 [4th Dept 2021], lv denied 37 NY3d 955 [2021]), the hearsay information provided by the CI "satisfied both prongs of the Aguilar-Spinelli test. The reliability of the CI was established by the officers' statements that the CI had given credible and accurate information in the past . . . , and the CI's basis of knowledge was established because the police investigation corroborated the information provided by the CI" (id. at 1568; see People v Barnes, 139 AD3d 1371, 1373 [4th Dept 2016], lv denied 28 NY3d 926 [2016]; Monroe, 82 AD3d at 1674-1675; see generally People v Bigelow, 66 NY2d 417, 423-424 [1985]). Inasmuch as defendant, another codefendant and the victim were wearing ankle monitors, officers were able to verify much of the information provided by the CI, which consisted of detailed information about the robbery of the victim's home, a plot to kidnap the victim, and the ultimate assault of the victim. After the victim was reported missing, law enforcement officers placed defendant's home under surveillance, where officers observed a man and woman working in defendant's backyard in the middle of the night. [*2]We thus conclude that, at the time of defendant's arrest and at the time the search warrants were issued, officers had " 'information sufficient to support a reasonable belief that an offense ha[d] been . . . committed' by" defendant (People v Shulman, 6 NY3d 1, 25 [2005], cert denied 547 US 1043 [2006], quoting Bigelow, 66 NY2d at 423; see People v Harlow, 195 AD3d 1505, 1506-1507 [4th Dept 2021], lv denied 37 NY3d 1027 [2021]; Monroe, 82 AD3d at 1675).
Contrary to defendant's further contention, the court did not err in refusing to suppress statements he made when first taken into custody, but before he was provided Miranda warnings, inasmuch as the statements were responses to pedigree questions (see People v Wortham, 37 NY3d 407, 413-415 [2021], cert denied — US &mdash, 143 S Ct 122 [2022]; People v Rodney, 85 NY2d 289, 292-294 [1995]). Although defendant correctly contends that there are times when pedigree questions seek inculpatory information and must be preceded by Miranda warnings, such as where a person's address might be important to establishing the criminal charges (see People v Slade, 133 AD3d 1203, 1206 [4th Dept 2015], lv denied 26 NY3d 1150 [2016]), this is not such a case. Here, as in Wortham, defendant was asked his name and address so "the police [could] know whom they ha[d] in custody" (37 NY3d at 415).
Based on our determination, defendant's remaining contention related to the admission of his statements is academic.
With respect to the search warrants, defendant further contends that the warrant for his home was invalid because it incorrectly described the residence. We reject that contention. "The Federal and State Constitutions provide that warrants shall not be issued except upon probable cause . . . and particularly describing the place to be searched, and the persons or things to be seized" (People v Cook, 108 AD3d 1107, 1108 [4th Dept 2013], lv denied 21 NY3d 1073 [2013] [internal quotation marks omitted]).
"Although '[p]articularity is required in order that the executing officer can reasonably ascertain and identify . . . the persons or places authorized to be searched and the things authorized to be seized[,] . . . hypertechnical accuracy and completeness of description' in the warrant is not required" (People v Madigan, 169 AD3d 1467, 1468 [4th Dept 2019], lv denied 33 NY3d 1033 [2019], quoting People v Nieves, 36 NY2d 396, 401 [1975]). Thus, an
" 'imprecise description of the premises to be searched appearing on the face of the warrant will not invalidate a search so long as the description enables the executing officers with reasonable effort [to] ascertain and identify the place intended' " (People v Carpenter, 51 AD3d 1149, 1150 [3d Dept 2008], lv denied 11 NY3d 786 [2008]).
Here, we conclude that "the description of the premises on the warrant was sufficient to enable the executing officers to ascertain the premises intended" (People v Anderson, 291 AD2d 856, 857 [4th Dept 2002]), and the officers "were able 'to readily ascertain and identify the target premises with reasonable and minimal effort' " (People v Thomas, 155 AD3d 1120, 1121-1122 [3d Dept 2017], lv denied 31 NY3d 1018 [2018]; see People v Mitchell, 57 AD3d 1232, 1233 [3d Dept 2008], lv denied 12 NY3d 760 [2009]; cf. People v Rainey, 14 NY2d 35, 37 [1964]).
As a last contention related to the search warrants, defendant contends that the warrant for cell site location data related to his cellular phone was overbroad, but he correctly concedes that he failed to preserve that contention for our review by not raising it before the motion court (see People v DeJesus, 192 AD3d 561, 562 [1st Dept 2021], lv denied 37 NY3d 964 [2021]; People v Chambers, 185 AD3d 1141, 1146 [3d Dept 2020], lv denied 36 NY3d 1055 [2020]; see also People v Navarro, 158 AD3d 1242, 1243-1244 [4th Dept 2018], lv denied 31 NY3d 1120 [2018]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Before trial, defendant sought to suppress evidence of identification of him by a codefendant who was involved in a pretrial identification procedure. Defendant now contends that the court erred in refusing to suppress that evidence because the single photograph identification procedure used with that codefendant was unduly suggestive and that the court erred in concluding, following a Rodriguez hearing, that the identification was merely confirmatory (see generally People v Rodriguez, 79 NY2d 445, 450 [1992]). During the investigation into the victim's death, officers interviewed the codefendant who identified defendant as one of the participants in the victim's murder. Instead of showing the codefendant a [*3]photo array with multiple people, they showed him a single photograph of defendant, with his name on the bottom. Although the officers had folded the photograph in an attempt to avoid the codefendant seeing defendant's name, the codefendant immediately unfolded the photograph and identified defendant as one of the participants in the murder.
The evidence at the Rodriguez hearing established that, in addition to being with defendant throughout the day of the crimes (cf. People v Coleman, 73 AD3d 1200, 1202 [2d Dept 2010]), the codefendant was familiar with defendant from the neighborhood, seeing him numerous times at a particular corner. He was also familiar with defendant due to defendant's friendship with the codefendant's uncle, who was also involved in the crimes. The identifying codefendant's observations of defendant on the day of the crimes "could not have been more intense or focused" (People v Breland, 83 NY2d 286, 295 [1994]) and that, combined with his familiarity with defendant, supports the court's determination that the identification of defendant by that codefendant was confirmatory (see People v Carter, 107 AD3d 1570, 1572 [4th Dept 2013], lv denied 23 NY3d 1019 [2014]; People v Espinal, 262 AD2d 245, 245 [1st Dept 1999], lv denied 93 NY2d 1017 [1999]). As a result, there was " 'little or no risk' that police suggestion could lead to a misidentification" (Rodriguez, 79 NY2d at 450; see People v Colon, 196 AD3d 1043, 1045 [4th Dept 2021], lv denied 37 NY3d 1026 [2021]). Given our determination, we do not address defendant's remaining contentions regarding the identification.
Defendant further contends that certain Facebook messages were improperly entered into evidence because they were not properly authenticated and they violated his constitutional right of confrontation. We reject those contentions. Addressing first the constitutional issue, we conclude that defendant failed to preserve his contention related to the confrontation clause by failing to address that ground in objecting to the admission of the messages, and the court did not expressly decide that issue in denying defendant's objection (see People v Dennis, 91 AD3d 1277, 1278 [4th Dept 2012], lv denied 19 NY3d 995 [2012]; see generally CPL 470.05 [2]). Although defense counsel indicated, before trial, that he would be raising a confrontation issue, he did not actually do so. In any event, "[f]or the statement to be admitted, the declarant must be unavailable and the statement must bear some indicia of reliability sufficient to justify its admission, even in the absence of cross-examination" (People v Glenn, 185 AD2d 84, 88 [4th Dept 1992]). Here, the declarant was unavailable and there were sufficient indicia of reliability. "The indicia of reliability requirement can be met in either of two circumstances: where the hearsay statement falls within a firmly rooted hearsay exception, or where it is supported by a showing of particularized guarantees of trustworthiness" (People v James, 93 NY2d 620, 641 [1999]). One firmly rooted exception to the hearsay rule is a "declaration by a coconspirator during the course and in furtherance of the conspiracy, [which] is admissible against another coconspirator [under the] exception" (People v Bac Tran, 80 NY2d 170, 179 [1992], rearg denied 81 NY2d 784 [1993]; see People v Caban, 5 NY3d 143, 148 [2005]; James, 93 NY2d at 641). Contrary to defendant's contention, the People established that the statements were made while defendant and the codefendant, who was sending and receiving the messages, were "engaged in a joint criminal enterprise" (Glenn, 185 AD2d at 88).
With respect to the authentication issue, we conclude that, even assuming, arguendo, that the messages were not sufficiently authenticated and that the court erred in admitting those messages in evidence (see People v Upson, 186 AD3d 1270, 1271 [2d Dept 2020], lv denied 36 NY3d 1054 [2021]; cf. People v Serrano, 173 AD3d 1484, 1487-1488 [3d Dept 2019], lv denied 34 NY3d 937 [2019]; see generally People v Price, 29 NY3d 472, 476 [2017]), "the admission of such evidence was harmless as the evidence of . . . defendant's guilt was overwhelming, and there was no significant probability that the error contributed to . . . defendant's conviction[]" (Upson, 186 AD3d at 1271; see Colon, 192 AD3d at 1569; see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]).
Contrary to defendant's final contentions, we conclude that the conviction is supported by legally sufficient evidence on each count (see generally People v Bleakley, 69 NY2d 490, 495 [1987]) and that the verdict, viewed in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495).
Entered: May 5, 2023
Ann Dillon Flynn
Clerk of the Court