**Borys DIAZ, Petitioner,**

v.

**Victor HERBERT, Superintendent, Attica Correctional Facility, Respondent.**

**No. 01 CIV. 9395(VM).**

United States District Court, S.D. New York.

May 10, 2004.

Borys Diaz, Attica, NY, pro se.

### *DECISION AND ORDER*

MARRERO, District Judge.

*Pro se* prisoner Borys Diaz ("Diaz") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (" § 2254"). Diaz was convicted by a jury in New York State Supreme Court of murder in the second degree and of conspiracy in the second degree, for which he was sentenced to indeterminate terms of imprisonment from 25 years to life and from 8⅓ years to 25 years for the two charges respectively. Diaz alleges that his rights under both the federal and New York State Constitutions were violated during different portions of his criminal proceedings in state court. Specifically, Diaz asserts four grounds for relief: (1) his absence during certain off-the-record sidebar conferences during the voir dire of four prospective jurors violated his right to be present at all material stages of his trial; (2) the New York State appellate court failed to correct alleged errors in the trial

court's accomplice corroboration charge to the jury; (3) his sentences for the two charges for which he was convicted should have been imposed concurrently rather than consecutively; and (4) his counsel rendered ineffective assistance at the trial by stipulating to the unavailability of an unindicted co-conspirator, thereby permitting the admission of out-of-court statements; and that his appellate counsel was likewise ineffective for failing to challenge on appeal the actions of trial counsel. Respondent Victor Herbert, Superintendent of the Attica Correctional Facility (the "State") where Diaz is imprisoned, interposes both procedural and substantive arguments in opposition to Diaz's petition. For the reasons discussed below, Diaz's petition is denied in its entirety.

## I. BACKGROUND

### A. FACTUAL SUMMARY AND PROCEDURAL HISTORY[1]

On December 14, 1993, Lillian DeJesus ("DeJesus") was killed by a single gunshot wound to the head as she walked out of her place of employment in Bronx County, New York. DeJesus was the newly-hired Chief Financial Officer of Promesa, a non-profit organization that provides community services related to substance abuse, among them, financial assistance to individuals suffering from substance abuse problems. Diaz, who also worked at Promesa, and two co-defendants, Jeffrey Rivera ("Rivera") and Wayne Haywood

("Haywood"), all were charged with DeJesus's murder and with conspiracy to commit the crime.

According to the Indictment and the evidence adduced at Diaz's trial, Diaz conspired with others to murder DeJesus for about a month before the shooting occurred. On the day of the murder, to carry out the crime, Diaz provided Rivera and Haywood with the pistol used in the shooting and transported his accomplices to where DeJesus worked. Rivera and Haywood, lying in wait outside Promesa's headquarters, shot and killed DeJesus when she emerged from the building with two co-workers. Diaz paid Rivera and Haywood moments later. Diaz apparently had DeJesus murdered because DeJesus had initiated an investigation into discrepancies in Promesa's accounting records. At the time of the murder, the investigation had revealed that large sums of money were unaccounted for in a division of Promesa where Diaz worked as a caseworker and where he had access to cash.

A New York State Supreme Court jury convicted Diaz on charges of murder in the second degree and conspiracy in the second degree.[2] For the murder conviction, the court (the "trial court") sentenced Diaz to an indeterminate term of imprisonment from 25 years to life. For the conspiracy conviction, Diaz received an indeterminate sentence of imprisonment from 8⅓ years to

---

**1.** The following factual and procedural summary is derived primarily from the following documents: Petition under 28 U.S.C. § 2254, *Diaz v. Herbert*, S.D.N.Y., No. 01 CV 9395, dated Sept. 10, 2001 ("Petition"); Addendum to Petition for Habeas Corpus, *Diaz v. Herbert*, S.D.N.Y., No. 01 CV 9395, dated Sept. 5, 2003 ("Addendum"); Affidavit in Opposition To Petition for a Writ of Habeas Corpus, dated Feb. 3, 2004 ("St.Aff."); Respondent's Memorandum of Law, dated Feb. 3, 2004 ("St.Mem."); Reply to Respondent's Answer and Memorandum of Law in Opposition to

Petition for Habeas Corpus, dated Mar. 15, 2004 ("Reply"); Transcript of Trial Proceedings, *People v. Diaz*, Ind. No. 176/94, Nov. 1995 ("Trial Tr."); Transcript of Reconstruction Hearing, *People v. Diaz*, Ind. No. 176/94, Oct. 22, 1999 ("Hearing Tr."); and the exhibits attached to these documents. Except where specifically referenced, no further citation to these sources will be made.

**2.** The jury found Diaz not guilty on a charge of criminal possession of a weapon in the third degree.

25 years, to be served consecutively with the sentence for the murder charge.[3]

With new counsel, Diaz appealed his conviction to the New York State Supreme Court, Appellate Division, First Department (the "Appellate Division"). Diaz raised four arguments on direct appeal: (1) his absence from sidebar conferences with prospective jurors that were excused from jury service violated his right to be present at all material times during his trial; (2) the trial court committed errors in its accomplice corroboration charge to the jury; (3) his sentences should have been imposed concurrently rather than consecutively; and (4) the sentences imposed were unduly harsh and excessive in light of his criminal history. Diaz's appellate counsel did not raise an ineffective assistance of trial counsel claim on direct appeal to the Appellate Division.

The Appellate Division held Diaz's sentence in abeyance and remanded the case to the trial court for a reconstruction hearing on the first issue, namely, to determine whether four members of the venire that were called to off-the-record sidebar conferences in the presence of counsel for both parties were ultimately dismissed for cause or on consent. *See People v. Diaz,* 262 A.D.2d 255, 690 N.Y.S.2d 454 (1st Dep't 1999). The trial court held the reconstruction hearing on October 22, 1999, where the assistant district attorney who prosecuted Diaz at trial (the "ADA") and Diaz's trial counsel testified with regard to the discussions held at sidebar regarding the four particular prospective jurors.

After considering the testimony at the reconstruction hearing, and based upon its own recollection of the trial, the trial court concluded that the four members of the jury pool in question, whose excusals form the grounds for Diaz's claim that he was not present at all material stages of his proceedings, were excused for cause, notwithstanding that the trial court stated on the record that they were excused on consent. (*See* Hearing Tr. at 39:16–40:10.) Specifically, the trial court found that during the voir dire, these four potential jurors were excused because they represented that they had some connection with law enforcement and upon further questioning, they expressed doubt as to whether they would be able to weigh the testimony of a law enforcement officer on the same basis as that of any other witness and/or as to whether, based upon their ties to law enforcement, they could maintain impartiality while deliberating. (*See id.* at 41:6–43:4.)

On appeal, the Appellate Division affirmed Diaz's conviction. *See People v. Diaz,* 270 A.D.2d 167, 706 N.Y.S.2d 23 (1st Dep't 2000). In affirming, the court found no basis to disturb the trial court's holding that these venire persons were, in fact, excused for cause and that "such excusals are in the nature of an uncontested excusal for cause, and thus defendant could not have made a meaningful contribution to any of the sidebar discussions with the jurors . . . ." *Id.* at 23 (internal quotations and citation omitted).

Diaz, through his appellate counsel, then requested leave to appeal the first three issues raised before the Appellate Division to the New York State Court of Appeals, namely, his absence from sidebars during questioning of prospective jurors, the alleged errors in the trial court's corroboration charge, and the propriety of the trial court's imposition of consecutive sentences. In a decision without published opinion, the New York Court of Appeals denied

---

**3.** Rivera pled guilty pursuant to a plea agreement and was sentenced from 17 years to life in prison. Haywood was convicted by a jury in a separate trial and was given a sentence similar to Diaz's.

Diaz's leave to appeal. *See People v. Diaz,* 735 N.E.2d 420 (N.Y.2000).

In September 2001, Diaz proceeded to file his *pro se* habeas corpus petition before this Court asserting the same issues raised to the Appellate Division with the exception of the excessive sentence claim. The following year, Diaz filed a *pro se* petition before the Appellate Division for a writ of error *coram nobis.* In this petition and subsequent amendment thereto, Diaz asserted an ineffective assistance of appellate counsel claim on a host of grounds, among them, his counsel's failure to raise on appeal trial counsel's ineffectiveness for stipulating to the unavailability of three co-defendants, which permitted the admission at trial of inculpatory out-of-court statements. (*See* Addendum at Att. B.)

Diaz sought and obtained from this Court a stay of his habeas corpus petition until he could exhaust his ineffective assistance of counsel claim through his writ of *coram nobis.* The Appellate Division denied Diaz's *coram nobis* petition in a decision without a published opinion. *See People v. Diaz,* 306 A.D.2d 957, 762 N.Y.S.2d 866 (1st Dep't 2003). Diaz again filed leave to appeal to the New York Court of Appeals, and again, leave was denied without a published opinion. *See People v. Diaz,* 100 N.Y.2d 594, 766 N.Y.S.2d 169, 798 N.E.2d 353 (2003). Diaz then filed an addendum to his habeas corpus petition to add his claim of ineffective assistance of trial and appellate counsel, which the Court considers together with his original petition.

## B. *DIAZ'S HABEAS CORPUS PETITION*

As discussed above, Diaz advances four arguments in the instant petition. First, Diaz contends that he was deprived of his federal constitutional right under the Sixth Amendment to be present at all material stages of his trial when he was not present at four off-the-record sidebar discussions with individual members of the jury pool. (*See* Petition at 25–29.) The State counters that this claim is unexhausted for habeas corpus review, and is otherwise meritless. (*See* St. Mem. at 2–7.)

Second, Diaz argues that the trial court provided the jury an erroneous charge on the issue of accomplice corroboration in violation of the New York State Constitution and the Due Process and Confrontation Clauses of the United States Constitution. (*See* Petition at 29–36.) The State argues that the Court should decline to review this claim because it was rejected by the Appellate Division on independent and adequate state grounds, and because such a claim is not cognizable on habeas corpus review. (*See* St. Mem. at 8–13.)

Third, Diaz argues that the Appellate Division failed to modify the trial court's imposition of consecutive sentences and that this alleged error violated his rights under the federal and New York State Constitutions. According to Diaz, the act that formed the basis of the murder conviction was also a material element of the conspiracy conviction, and thus, the sentences for these two crimes should have been imposed to run concurrently. (*See* Petition at 37–39.) The State argues that such a claim is not proper for review under habeas corpus and that the sentences imposed were not in violation of applicable New York State law. (*See* St. Mem. at 14–16.)

Finally, Diaz contends that his trial counsel was ineffective for stipulating to the unavailability of an unindicted co-conspirator who made incriminating out-of-court statements about Diaz to an accomplice. These out-of-court statements were introduced through the accomplice who testified at trial. (*See* Addendum at 3–5.) Diaz also raises a claim of ineffective assistance of appellate counsel on the grounds

that his appellate counsel failed to raise his trial counsel's alleged errors on direct appeal. The State opposes this basis for relief on the grounds that Diaz has failed to make the requisite showing for such a claim. (*See* St. Mem. at 17–21.)

## II. DISCUSSION

### A. STANDARD FOR HABEAS CORPUS REVIEW

#### 1. General Principles

A petitioner in custody pursuant to a judgment of a state court is entitled to habeas relief only if he can show that his detention violates the United States Constitution or federal law or treaties of the United States. *See* 28 U.S.C. § 2254(a). The purpose of federal habeas review of state court convictions is to "assure that when a person is detained unlawfully or in violation of his constitutional rights he will be afforded an independent determination by a federal court of the legality of his detention, even though the issue may already have been decided on the merits by a state tribunal." *United States ex rel. Radich v. Criminal Court of New York,* 459 F.2d 745, 748 (2d Cir.1972).

#### 2. Exhaustion Doctrine

 Generally, a petitioner must have exhausted the remedies available to him in state court before seeking habeas corpus relief unless there is no state corrective process or it otherwise appears that such process would be ineffective to protect the petitioner's rights. *See* 28 U.S.C. § 2554(b)(1). In order to meet this exhaustion requirement, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Cotto v. Herbert,* 331 F.3d 217, 237 (2d Cir.2003) (citation omitted). In other words, a habeas petitioner must have "fairly presented" in state court the claims that are raised in the habeas peti-

tion. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *see also Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *Strogov v. Attorney General of New York,* 191 F.3d 188, 191 (2d Cir.1999); *Gonzalez v. Sullivan,* 934 F.2d 419, 422 (2d Cir. 1991). A federal court, however, retains discretion to entertain the merits of a petitioner's federal claim even if it is not exhausted in state court. *See* 28 U.S.C. § 2554(b)(2).

#### 3. Standard of Review

Pursuant to the various sub-sections of § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, this Court's review is guided by certain restrictions on the nature and extent of review that a federal court can conduct in considering a habeas petition. Under § 2254, if a state court adjudicates a petitioner's federal claim on the merits, a federal court on habeas corpus review must defer to the state court's determination of that claim unless such adjudication resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

 A state court adjudicates a petitioner's federal claim "on the merits," and thus triggers the highly-deferential AEDPA standard of review, when it: (1) disposes of the claim on the merits; and (2) reduces its disposition to judgment. *See Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). In so doing, the state court need not explicitly refer to either the particular federal claim or to any federal caselaw. *See id.* The only requirement is that the claim be

finally resolved, with res judicata effect, on substantive rather than procedural grounds. *See id.* at 311.

If the state court does not adjudicate a petitioner's federal claim on the merits, the state court's decision on the federal claim is entitled to no deference and instead, the federal court must apply a pre-AEDPA *de novo* review to the state court's disposition of the federal claim. *See Cotto,* 331 F.3d at 230 (citing *Aparicio v. Artuz,* 269 F.3d 78, 93 (2d Cir.2001)).

### 4. *Factual Determinations by the State*

■ Under § 2254, factual determinations made by the state court are presumed to be correct, and the petitioner carries the burden to rebut this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Consequently, this Court presumes that the factual findings of the New York courts are correct and will not set aside those findings unless "the material facts were not adequately developed" or the factual determinations are not fairly supported by the record. *Smith v. Mann,* 173 F.3d 73, 76 (2d Cir.1999).

### 5. *Independent and Adequate State Grounds*

■ Finally, under the doctrine of "independent and adequate state grounds," a federal court should not address a petitioner's habeas corpus claim if the state judgment can be sustained on state law grounds that are independent of the federal questions raised and that are adequate to support the judgment. *See Lee v. Kemna,* 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002) (citing *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *see also Garcia v. Lewis,* 188 F.3d 71, 76–78 (2d Cir.1999). In cases where the highest state court that rendered a judgment in the case "clearly and expressly states that its judgment rests on a state procedural bar," such procedural default constitutes

independent and adequate state grounds to deny habeas relief. *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (internal quotations and citations omitted); *see also; Levine v. Commissioner of Corr. Services,* 44 F.3d 121, 126 (2d Cir.1995). This doctrine is prudential rather than jurisdictional. *See Lambrix v. Singletary,* 520 U.S. 518, 522–23, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997).

■ A procedural default may be excused, however, if the petitioner demonstrates either cause for the default and actual prejudice from the alleged violation of federal law; or that the failure to consider the claims will "result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. In this context, "cause" is defined as " 'some objective factor, external to the defense [that] impeded counsel's efforts' to raise the claim in state court." *McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).

A miscarriage of justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, ...." *Murray,* 477 U.S. at 496, 106 S.Ct. 2639; *see also Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.2002). A petitioner establishes actual innocence by demonstrating that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Dixon,* 293 F.3d at 81 (internal quotations and citations omitted). In this context, " 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citing *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)).

## B. *INEFFECTIVE ASSISTANCE OF COUNSEL*

Under the United States Supreme Court's test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a criminal defendant must meet a two-prong test in order to successfully make out a claim of ineffective assistance of counsel. First, the defendant must demonstrate "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. This burden entails overcoming the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (internal quotations and citations omitted). A court must look to the totality of the circumstances to determine whether counsel "failed to exercise the skills and *diligence* that a reasonably competent attorney would provide under similar circumstances." *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir.1996) (citation omitted) (emphasis in original). The applicable standard of counsel's conduct is "reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (citation omitted).

Under the second prong of *Strickland*, a defendant must demonstrate prejudice by showing a reasonable probability that counsel's error altered the result of the proceeding. *See Strickland*, 466 U.S. at 691, 104 S.Ct. 2052 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."); *accord United States v. Campbell*, 300 F.3d 202, 214 (2d Cir.2002) (stating that both *Strickland*

prongs must be met in order for a petitioner to prevail on an ineffective assistance of counsel claim). A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. The "prejudice" prong under *Strickland* is not simply outcome determinative, but rather, it focuses on the impact of counsel's performance on the overall integrity of the proceeding. *See Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Aeid v. Bennett*, 296 F.3d 58, 63 (2d Cir.2002).

The determination of prejudice is made with the benefit of hindsight, unlike the determination of whether counsel committed egregious errors in the first place, which is judged under the circumstances at the time of the representation. *See Lockhart*, 506 U.S. at 372, 113 S.Ct. 838; *see also United States v. Eyman*, 313 F.3d 741, 743 (2d Cir.2002); *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir.1994).

Ineffective assistance of counsel under *Strickland* implicates a criminal defendant's right to counsel under the Sixth Amendment of the United States Constitution. *See Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir.2001) ("Occasionally, the performance of defense counsel is so dismal that it ripens into the deprivation of counsel altogether and potentially violates the defendant's Sixth Amendment rights."). Despite the implication of a defendant's right to counsel, the *Strickland* test imposes a heavy burden on defendants who assert a claim of ineffective assistance of counsel. *See Kimmelman v. Morrison*, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (referring to the *Strickland* test as "highly demanding"). This burden is designed "to deter a baseless attack on the performance of counsel in a last-ditch effort to avoid a conviction or reduce the sentence." *Percan v. Unit-*

*ed States,* 294 F.Supp.2d 505, 511 (S.D.N.Y.2003). The *Strickland* standard applies equally to appellate counsel as it does to trial counsel. *See Clark v. Stinson,* 214 F.3d 315, 321 (2d Cir.2000).

## C. APPLICATION

Against these legal standards, the Court turns to each of Diaz's claims in his petition.[4]

### 1. Absence from Sidebar Conferences

As discussed above, Diaz asserts that his absence from four off-the-record sidebar conferences with individual members of the venire violated his right under the Sixth Amendment to be present at all material stages of his trial. Each of these four sidebar discussions focused on the venire member's ability to serve as an impartial juror in light of his or her connection to law enforcement. The four candidates were excused from jury service in Diaz's trial.[5] The trial judge, the ADA, and Diaz's trial counsel were present at each sidebar conference. There is nothing in the record to suggest that Diaz requested to be present at the sidebars or that he objected to his absence.

While Diaz challenges his absence from all four sidebar conferences, he focuses his challenge on his absence from the fourth sidebar voir dire. This venire member indicated that his wife was a police officer and that he was a member of the Blue Knights, an fraternal organization that has many police officers as members. (*See* Petition at 25–26.) According to Diaz, had he been present at this sidebar, he would have instructed his attorney to permit this person to sit on the jury because a police officer's spouse would

> know that police officers are no less human than any civilian. They would have heard stories of possible dishonesty from fellow police personnel. They would have had contact with other police personnel and have realized that not all police are truthful and honest. They would know that overzealous police officers do exist.

(*Id.* at 26.) Thus, Diaz contends that he would have benefited from having this prospective juror sit on his jury.

The State argues that the Court should decline to entertain this claim because it is unexhausted. Specifically, the State asserts that while Diaz argued to the Appellate Division, both prior to and after the reconstruction hearing, that these jurors were excused on consent, Diaz now argues to this Court that whether they were excused for cause or on consent is a matter of semantics and does not affect his right to be present. (*See* St. Mem. at 3–4.)

Although the State is technically correct as to the change in the tenor of Diaz's argument on this claim between the time of his direct appeal to the Appellate Division and his petition before this Court, the Court doubts that Diaz failed to "fairly present" the claim to the highest state court that issued a judgment. It is clear that the Appellate Division was fairly appraised that Diaz was challenging his absence from these sidebar conferences on both federal and state constitutional grounds. (*See* St. Aff. at Ex. 1, pp. 23–27.) The Court need not belabor the exhaustion

---

**4.** The Court notes at the outset that to the extent Diaz grounds his claims on the New York State Constitution, such claims are not cognizable on habeas review, as § 2254 clearly mandates that a federal court is to consider only claims arising under the constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a).

**5.** The testimony at the reconstruction hearing established that these four members of the venire were either law enforcement officers themselves or were related to a law enforcement officer. (*See* Hearing Tr. at 23:24–25:6.)

issue on this point, however, because as will be discussed below, this claim suffers from other technical and substantive defects.

■ While Diaz invokes the federal constitution, it is clear from Diaz's submissions that the legal principle upon which he anchors his claim is the rule announced by the New York Court of Appeals in *People v. Antommarchi*, 80 N.Y.2d 247, 590 N.Y.S.2d 33, 604 N.E.2d 95 (1992). (*See* Petition at 26–28.) In *Antommarchi*, the Court of Appeals held that a criminal defendant has a right to be present during a sidebar voir dire of a potential juror when the questioning pertains to the potential juror's background, *i.e.*, matters that touch upon the ability to objectively weigh the evidence. *See id.* at 97. In a vacuum, this decision may seem to be factually on-point with the present case. For the purpose of federal habeas review, however, *Antommarchi* does not provide a basis for granting Diaz the relief he seeks.

As discussed above, for purposes of Diaz's habeas corpus petition, the Court need only determine whether Diaz's federal constitutional rights have been violated. In an attempt to justify habeas relief, Diaz asserts that *Antommarchi* is "embedded in Federal Law, as decided by the Supreme Court." (Petition at 26.) The Court does not agree. Subsequent decisions of the New York Court of Appeals make clear that the *Antommarchi* rule is not a result of federal constitutional or statutory mandate, but rather, is grounded in New York Criminal Procedure Law § 260.20 (" § 260.20"), which states that a "defendant must be personally present during the trial of an indictment; ...." N.Y.Crim. Proc. Law § 260.20 (McKinney 2004). *See, e.g., People v. Maher*, 89 N.Y.2d 318, 653 N.Y.S.2d 79, 675 N.E.2d 833, 835–36 (1996) (stating that a defendant's right to be present at a sidebar with a potential juror is "governed exclusively by New York statutory law"); *People v. Vargas*, 88 N.Y.2d 363, 645 N.Y.S.2d 759, 668 N.E.2d 879, 884 (1996) (stating that under *Antommarchi*, defendants have a statutory right under § 260.20 to be present at voir dire sidebars and thus, the rule is "not rooted in the Constitution"); *People v. Mitchell*, 80 N.Y.2d 519, 591 N.Y.S.2d 990, 606 N.E.2d 1381, 1385 (1992) (discussing that the *Antommarchi* rule was a recognition of a statutory violation of § 260.20 and thus, "is not compelled by Federal law ....").

Indeed, the *Antommarchi* court did not discuss any constitutional basis for its holding, citing only § 260.20 for the proposition that a defendant has a fundamental right to be present at a material stage of a trial. *See Antommarchi*, 590 N.Y.S.2d 33, 604 N.E.2d at 97. Thus, even if Diaz's rights under *Antommarchi* were violated, it does not rise to the level of a federal constitutional violation. Therefore, any alleged violation of these rights is not cognizable on habeas review.

■ Even considering the merits of Diaz's claim, the Court finds no basis to grant relief. Generally, a criminal defendant has a right to be present at all material stages of his trial under the Confrontation Clause of the Sixth Amendment and Due Process Clause of the Fifth and Fourteenth Amendments. *See United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). The empaneling of a jury is a material stage of a trial that requires the defendant's presence. *See Norde v. Keane*, 294 F.3d 401, 411 (2d Cir.2002); *see also* Fed.R.Crim.P. 43(a)(2). This right, however, is not absolute. Rather, it arises only when the defendant's presence "has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934). In other

words, "[t]he constitutional right to be present at trial, ... [applies] only to the extent that a fair and just hearing would be thwarted by [the defendant's] absence." *United States v. Ferrarini*, 219 F.3d 145, 152 (2d Cir.2000) (internal quotations and citations omitted).

■■■ The Court finds that as a purely practical matter, Diaz's claim on this point is wholly lacking in merit. The record of the reconstruction hearing established that the venire members at issue here were in fact excused because of an expressed bias *against* Diaz based on their ties to law enforcement. Specifically, the ADA testified on cross-examination that, based on his notes during the voir dire, these four members of the venire expressed that they could not be fair to Diaz, although the ADA could not independently recall with certainty. (*See* Hearing Tr. at 23:18–22.) ("[T]hese [four] people came up and said, you know, you don't want me on this case, because I'm going to convict him."); (*see also id.* at 25:19–21.) Diaz's trial counsel, on the other hand, could not recall if the four individuals expressed a bias against Diaz, although he thought that at least one of them did. (*See id.* at 9:8–12.) Based on this testimony, and on its own recollection, the trial court judge concluded that these four venire members were excused for cause. (*See id.* at 39:16–23.)

As discussed above, for the purposes of habeas review, the trial court's factual finding (and the Appellate Division's affirmation) that the four venire persons were excused for cause are presumed to be correct. Diaz carries the burden to rebut this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Diaz's conclusory argument in his petition that the trial court engaged in a "dialogue of semantics" when it determined that the prospective jurors were excused for cause rather than on consent is insufficient to rebut the presumption of correctness that attaches to the factual findings of the trial court. Accordingly, the Court presumes that the four venire members in question were excused for cause.[6] The Court's own review of the record supports this conclusion.

Presuming that the four members of the venire were excused for cause on the grounds the trial court found sufficient, it would be incongruous for Diaz, had he been present at these sidebar conferences, to have advised his counsel to allow those individuals to serve on his jury, as that result would have worked to his detriment and surely supplied grounds—the obverse of what he argues here—to challenge his conviction on the basis of potential juror bias. Moreover, even if Diaz for some inexplicable reason would have attempted to retain some of those individuals for jury service, it is highly improbable that the trial judge, in the proper discharge of his duties, would have allowed such a prospect, given the potential for bias that was expressed. Thus, it is clear from the record that Diaz's presence at the sidebar conferences here in contention would have served no useful purpose and thus, it is highly unlikely that Diaz was prejudiced in any way. In short, Diaz's presence at the

---

6. Diaz argues that it does not matter whether the four prospective jurors were excused for cause or on consent. (*See* Reply at 1.) New York courts, however, have repeatedly held that when a member of the venire is excused for cause, a defendant's *Antommarchi* rights are not violated because the defendant's presence at the sidebar would not have made any significant contribution. *See, e.g., People v.* *Camacho,* 90 N.Y.2d 558, 664 N.Y.S.2d 578, 687 N.E.2d 396, 397 (1997); *People v. Vargas,* 88 N.Y.2d 363, 645 N.Y.S.2d 759, 668 N.E.2d 879, 885–86 (1996); *People v. Howell,* 2 A.D.3d 258, 769 N.Y.S.2d 233, 234 (1st Dep't 2003); *People v. Warren,* 272 A.D.2d 165, 709 N.Y.S.2d 504, 504–05 (1st Dep't 2000). Thus, Diaz's claim fails even under a pure application of state law.

sidebars would have been "useless, or the benefit but a shadow." *Snyder,* 291 U.S. at 106–07, 54 S.Ct. 330.

Other federal courts facing similar challenges have denied habeas relief on these grounds. *See, e.g., Figueroa v. Donnelly,* No. 02 Civ. 6259, 2003 WL 21146651, at \*9 (S.D.N.Y. May 16, 2003) (finding no federal right implicated by the defendant's *Antommarchi* claim and stating that when the venire person is excused for cause, the defendant could not have made any contribution to the sidebar); *Brown v. Edwards,* No. 96 Civ. 3444, 1998 WL 1286349, at \*5–6 (S.D.N.Y. Jan. 15, 1998) (discussing that *Antommarchi* is a state statutory rule and that no federal law violation occurs when a potential juror is excused for cause).

Even if Diaz's absence from the sidebar conferences in question somehow implicated a recognized federal right, the error would be, at best, harmless. Generally, a denial of a defendant's right to be present at all material stages of a trial is reviewed for harmless error. *See Rushen v. Spain,* 464 U.S. 114, 117–19, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); *United States v. Evans,* 352 F.3d 65, 68–69 (2d Cir.2003). When a defendant's constitutional rights have been violated due to trial error, habeas relief is warranted only if the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

Indeed, Second Circuit decisions reviewing a direct appeal from a federal criminal trial have applied such a standard to claims factually similar to the one Diaz raises here. For example, in *United States v. Feliciano,* 223 F.3d 102 (2d Cir. 2000), the Second Circuit held that the absence of the defendant from sidebar discussions with prospective jurors during voir dire was, at best, harmless error beyond a reasonable doubt that did not require reversal of his conviction. *See id.* at 112. The *Feliciano* court considered the fact that the defendant was present during the on-the-record portion of the voir dire, which was more extensive than the brief sidebars; and that the defendant had access to his attorney during the entire process. *See id.*

Similarly, in *Sanchez v. Duncan,* 282 F.3d 78 (2d Cir.2002), the Second Circuit found only harmless error in the absence of the defendant from off-the-record sidebar discussions with members of the venire when the defendant's counsel was present at all the sidebars, the defendant was present throughout the voir dire process, and the defendant could consult with his attorney before and in between the particular sidebars. *See id.* at 82–83. In light of the *Sanchez* court's holding that the defendant's absence from these sidebars was, at best, harmless error, it did not decide whether a defendant has a federal constitutional right to be present at these sidebars.[7] *See id.* at 83 n. 4; *see also Gaiter v. Lord,* 917 F.Supp. 145, 151 (E.D.N.Y.1996) (stating that the defendant's presence at sidebar conference of a venire person is not mandated under federal law).

Because similar circumstances existed during the voir dire in Diaz's trial, the Court discerns no federal constitutional violation sufficient in degree to grant Diaz the habeas relief he seeks. Diaz's speculative assertion that he would have success-

---

**7.** The facts in the present case are unlike those in *Cohen v. Senkowski,* 290 F.3d 485 (2d Cir.2002), where the Second Circuit held that it was a federal constitutional violation to exclude a criminal defendant from the entire pre-screening process of prospective jurors. *See id.* at 489–90.

fully argued to retain these four members of the venire is insufficient to establish a violation of his constitutional rights to warrant granting his petition.

Accordingly, the Court rejects Diaz's contention that he was denied his right to be present at all material stages of his trial because he was not present at sidebar conferences with the four members of the venire referred to in this claim.

### 2. *Accomplice Corroboration Charge*

■ Diaz alleges that the Appellate Division failed to correct errors in the trial court's charge to the jury regarding the corroboration requirement under New York State law. Specifically, Diaz challenges the trial court's charge relating to New York Criminal Procedure Law § 60.22 (" § 60.22"), which does not permit the testimony of an accomplice to form the basis of a conviction unless the state offers independent corroborating evidence that tends to connect the defendant with the commission of the crime. *See* N.Y.Crim. Proc. Law § 60.22(1) (McKinney 2004). According to Diaz, the trial court's instruction permitted the jury to convict him upon insufficient evidence in violation of the New York State Constitution and the Due Process and Confrontation Clauses of the United States Constitution. (*See* Petition at 29–32.)

The Court finds that Diaz's claim on this issue can be summarily denied under the doctrine of independent and adequate state law grounds. Because Diaz failed to raise his objection to the jury charge at trial, the Appellate Division found this claim unpreserved for appellate review. *See People v. Diaz,* 270 A.D.2d 167, 706 N.Y.S.2d 23, 23–24 (1st Dep't 2000). As discussed above, a procedural default at the state level is grounds for denial of habeas relief. *See Rhagi v. Artuz,* 309 F.3d 103, 106–07 (2d Cir.2002). Non-compliance with New York's contemporaneous objection rule, *see* N.Y.Crim. Proc. Law § 470.05(2) (McKinney 2004), is an adequate and independent state ground to deny habeas relief. *See Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Glenn v. Bartlett,* 98 F.3d 721, 724–25 (2d Cir.1996).

Although Diaz may seek to excuse this default by showing cause and actual prejudice, he has failed to make any such showing, and the Court finds nothing in the record to support any inference that there is cause to excuse Diaz's default. Diaz has also failed to make a showing of actual innocence to support the "miscarriage of justice" basis to excuse a procedural default. The Court's review of the trial transcript finds ample evidence (some of which is discussed below) upon which the jury could have convicted Diaz beyond a reasonable doubt of the two crimes for which he was charged. Accordingly, the Court finds that there is a sufficient basis to deny habeas relief on these grounds.

■ In addition, the Court agrees with the State that this claim is purely a challenge to New York's corroboration requirement under § 60.22—a requirement not mandated by federal law. *See United States v. Hamilton,* 334 F.3d 170, 179 (2d Cir.2003) (stating that the testimony of an accomplice can be the sole basis of a conviction "so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt.") (internal quotations and citation omitted). Under federal law, accomplice testimony that is uncorroborated goes to the weight of the evidence and not to its admissibility. *See id.* Thus, Diaz's claim does not arise under the Constitution, laws, or treaties of the United States to warrant habeas relief. *See* 28 U.S.C. 2254(a); *see also Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606

(1990) ("federal habeas corpus relief does not lie for errors of state law.").

■ Notwithstanding these obstacles, the Court will review the substance of Diaz's claim in an abundance of caution and to assure that there has been no miscarriage of justice. Where, such as here, a petitioner challenges the sufficiency of the evidence adduced at his state trial, a habeas court must view the evidence in a light most favorable to the state and the petitioner is entitled to relief only if "no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir.2002) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). A challenge to the sufficiency of the evidence adduced at a state trial "is essentially a question of state law and does not rise to federal constitutional dimensions, . . . absent a record so totally devoid of evidentiary support that a due process issue is raised." *Mapp v. Warden, New York State Corr. Inst. for Women*, 531 F.2d 1167, 1173 n. 8 (2d Cir.1976) (internal quotations and citations omitted). Accordingly, a petitioner "bears a 'very heavy burden' in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." *Ponnapula*, 297 F.3d at 179 (citation omitted).

■ More particularly, errors in state jury instructions do not generally give rise to habeas relief. *See Gilmore v. Taylor*, 508 U.S. 333, 344, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993). For a federal court to grant habeas relief in these instances, the petitioner must demonstrate not only that the instruction misstated the applicable law, but also that the error was so egregious that he was deprived of a right under federal law. *See Sams v. Walker*, 18 F.3d 167, 171 (2d Cir.1994).

■ The Court finds that Diaz has failed to meet this burden. First, Diaz has not shown that the instruction was an incorrect statement of state law nor that he was deprived of any federal right. Furthermore, upon review of the record, the Court finds that the specific evidence Diaz challenges satisfies the state statutory requirement for corroboration under § 60.22. At Diaz's trial, the most damaging testimony came from the State's main witness, Jesus Ortiz ("Ortiz"). Ortiz was a teenager who joined the conspiracy to kill DeJesus, although he later changed his mind and did not take part in the shooting. Ortiz testified that in November of 1993, he had a conversation with Carlos Ocasio ("Ocasio"), who disclosed to Ortiz that he was involved in a failed attempt to kill DeJesus on November 18, 1993. (*See* Trial Tr. at 302:18–303:13.) Ortiz further testified that in December of 1993, he had a second conversation with Ocasio whereby Ocasio attempted to recruit him to participate in a second attempt to murder DeJesus, the attempt that ultimately succeeded. (*See id.* at 303:20–304:14.) According to Ortiz, when he asked Ocasio why they were going to murder DeJesus, Ocasio replied that it was because she "owed money to Borys." (*Id.* at 304:5–14.)

Ortiz's testimony continued when the ADA elicited details as to how the participants in the conspiracy to kill DeJesus attempted to solicit Ortiz's participation on the day of the murder. (*See id.* at 311:9–313:9.) Specifically, Ortiz testified that he, Ocasio, and Rivera met Haywood near Haywood's residence, where they all proceeded to meet with Diaz, who pulled up in his vehicle. (*See id.* at 312:8–314:7.) According to Ortiz, everyone entered Diaz's vehicle, and Ortiz witnessed Diaz hand a firearm to Haywood and tell all of them: "You gotta kill the lady now." (*Id.* at 313:10–314:18.) Ortiz testified that at this point, he and Ocasio decided that they did not want to participate in the plot. Ortiz and Ocasio exited Diaz's vehicle, leaving

only Haywood and Rivera to carry out the crime. (*See id.* 314:18–20; 316:13–15.) Ortiz then testified that at some later time, he saw Diaz return to the area alone in his vehicle and then saw Haywood and Rivera arrive in a taxi cab. (*See id.* at 316:16–317:11.) According to Ortiz, Rivera then placed the murder weapon in the back of Diaz's vehicle and Diaz handed money to Haywood and Rivera. (*See id.* at 317:11–318:3.)

During its charge to the jury, the trial court first instructed the jury that Ortiz was an accomplice as a matter of law. (*See id.* at 724:24–725:6.) The jury was then instructed that it may consider either of the following as corroborating Ortiz's testimony: (1) the testimony of Elizabeth Jimenez ("Jimenez"), another Promesa employee who was leaving the building at the time of the shooting and observed a vehicle matching a description of Diaz's vehicle near the scene of the crime shortly after the shooting occurred; or (2) the testimony of a State cooperator, Adolphus Cooper ("Cooper"), a fellow inmate of Diaz to whom Diaz made inculpatory statements while in pre-trial detention. (*See id.* at 726:23–727:16.) Cooper testified at Diaz's trial that Diaz told him that he had murdered a woman for investigating some stolen money from a drug program, and that when she was shot, "she fell like a bag of rocks." (*See* Trial Tr. at 413:21–414:15.)

Diaz argues that the trial court "committed error when it marshaled the evidence in an itemizing process" during the jury charge on corroborating evidence. (*See* Petition at 31.) Diaz contends that the trial court failed to instruct the jury that Jimenez's testimony that she saw Diaz's vehicle in the vicinity of the shooting on the day DeJesus was killed was, by itself, insufficient to corroborate Ortiz's testimony. (*See id.* at 29–30.) Diaz essentially argues that Jimenez's testimony lacks probative value because evidence that Diaz's

vehicle was seen in the vicinity of the shooting is explained by the fact that Diaz was also a Promesa employee, and thus, the presence of his vehicle at the Promesa building at the time of the shooting was "purely innocent." (*Id.* at 31.)

The Court does not agree. The record in this case makes clear that Jimenez's testimony is sufficiently probative to independently corroborate Ortiz's testimony. While Diaz argues that because he was a Promesa employee, it would be logical to find his vehicle near the scene of the crime, the uncontested evidence adduced at trial established that Diaz did not work at the Promesa headquarters where DeJesus was killed. Rather, Diaz was employed as a caseworker at the satellite Promesa facility located on Clay Avenue, which was approximately two miles away from where the crime occurred. (*See* Trial Tr. at 147:5–16; 148:13–18.) While it is not inconceivable that Diaz, as a Promesa employee, may have had a legitimate reason to be at the Promesa headquarters, the record is devoid of any explanation as to why his vehicle may have been at the headquarters building at the time that the shooting occurred—despite the fact that Diaz's actual work location was two miles away. The absence of contrary evidence on this question renders Jimenez's testimony independently probative and certainly sufficiently probative to corroborate Ortiz's testimony under § 60.22, which does not require that the corroborating evidence, by itself, prove that the defendant is guilty, but only that the evidence "tend[s] to connect the defendant with the commission [the] ... offense." N.Y.Crim. Proc. Law § 60.22 (McKinney 2004).

In connection with Diaz's challenge to the corroboration charge, he now asserts for the first time, that the trial court erred when it admitted Cooper's testimony. (*See* Petition at 31.) Because this claim was never raised in the state proceedings,

and there has been no showing of cause or prejudice, the Court need not consider it. Nevertheless, it is clear that this argument also lacks merit. Diaz presumes that the jury must have disregarded Cooper's testimony because Cooper had also testified that he (Cooper) had cooperated in other cases in similar fashion and had received some benefit from the State, thereby demonstrating the potential for bias. (*See* Petition at 31; Trial Tr. at 428:10–435:18.) As the State correctly points out, however, because Cooper testified during cross-examination about his past cooperation in other criminal cases and the benefits he received therefrom, the jury could have considered Cooper's possible bias and afforded his testimony whatever weight it deemed proper. The Court discerns no error or prejudice to Diaz with the admission of Cooper's testimony.

In short, the record in this case establishes that, as to these two counts, there was sufficient evidence adduced at trial for a rational jury to find Diaz guilty beyond a reasonable doubt. Diaz has failed to carry his burden to convince this Court otherwise. The record supports the Court's finding that Diaz was not denied a fair trial as a result of the trial court's marshaling of the evidence during its charge. *See Johnson v. Scully*, 727 F.2d 222, 227 (2d Cir.1984) ("The marshalling of evidence is not subject to an equal time requirement, . . . ."). Moreover, the evidence that the trial court enumerated during its charge was sufficient to corroborate the accomplice's testimony. For the reasons discussed above, the Court finds that Diaz's due process guarantees under the Fourteenth Amendment were not violated by the trial court's corroboration charge to the jury, and the Appellate Divi-

sion's subsequent denial of this claim. Accordingly, the Court rejects this basis for habeas corpus relief.[8]

### 3. *Consecutive Sentences*

■ Diaz alleges that his federal due process rights were violated when the trial court imposed consecutive sentences for the murder and conspiracy convictions. (*See* Petition at 37–39.) Specifically, Diaz argues that because the act forming the basis of the murder conviction, *i.e.*, the shooting of DeJesus, constitutes a material element of the conspiracy conviction, the two sentences should have been imposed concurrently under New York law. *See* N.Y. Penal Law § 70.25(2) (McKinney 2004) (" § 70.25(2)").

The Appellate Division's single-line statement that Diaz's claim is "meritless," *see People v. Diaz*, 270 A.D.2d 167, 706 N.Y.S.2d 23, 24 (1st Dep't 2000), is more than likely sufficient to trigger the AEDPA deferential standard of review. *See Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir.2003) (discussing that if the record is clear that a claim was preserved for appellate review, a final determination by the Appellate Division can be considered to be "on the merits" even if the decision does not expressly discuss the merits). Nevertheless, because it is clear that this claim is based on Diaz's misunderstanding of the elements of the two offenses for which he was convicted, the Court can dispose of it summarily on the merits.

As with Diaz's other claims, the Court is concerned here only with any alleged violation of Diaz's federal constitutional rights and not necessarily with adherence to any state statutory requirements. Nevertheless, the Court looks to the application of New York law on this issue because "[n]o

---

8. Diaz also asserts a Confrontation Clause violation with respect to his challenge to the corroboration charge. (*See* Petition 29, 31–32.) Because Ortiz, Jimenez, and Cooper all testified at Diaz's trial and were subjected to cross-examination, however, the Court finds no basis for a Confrontation Clause claim.

federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992).

Diaz asserts that the act forming the basis of one conviction is a material element of the other conviction because the conspiracy charge in the indictment, which the trial court read to the jury during its charge, lists the actual shooting of DeJesus as one of the overt acts in furtherance of the conspiracy. According to Diaz, the shooting of DeJesus also forms the basis of the murder conviction, and therefore, the sentences should have been imposed concurrently. (*See* Petition at 38.)

This line of reasoning misapprehends the elements of the two offenses. The trial court instructed the jury that in order to find Diaz guilty on the charge of conspiracy in the second degree, it must find beyond a reasonable doubt that: (1) between November 18, 1993 and December 14, 1993, Diaz agreed with others to murder DeJesus; (2) Diaz made such an agreement with the intention that the act be performed; and (3) at least one of the co-conspirators performed an overt act in furtherance of the conspiracy. (*See* Trial Tr. at 754:20–758:9.) This instruction comports with the elements of the applicable New York penal statute. *See* N.Y. Penal Law § 105.15 (McKinney 2004). The jury was then instructed that it may consider any of the 11 overt acts charged in the indictment, of which one was the actual shooting of DeJesus. (*See* Trial Tr. at 758:10–760:4.) The other overt acts that the jury could consider included the acts that the co-conspirators performed about a month prior to the murder and the acts performed on the day of the murder. (*See id.*)

Similarly, the trial court instructed the jury that in order to find Diaz guilty of the charge of murder in the second degree, it must find beyond a reasonable doubt that:

(1) on December 14, 1993, Diaz, acting in concert with Haywood and Rivera, shot DeJesus; (2) Diaz acted with intent to cause the death of DeJesus; and (3) the shooting of DeJesus caused her death. (*See id.* at 748:5–750:5.) This instruction is likewise in accordance with the applicable New York statute. *See* N.Y. Penal Law § 125.25 (McKinney 2004).

It is clear that there is no directly overlapping element in these two crimes. The actual shooting of DeJesus, which is a material element of the murder charge, is only one of several overt acts that could satisfy the third element of the conspiracy charge. Because the actual commission of a murder is not an element of the conspiracy charge, the act forming the basis of the murder conviction is not a material element of the conspiracy conviction. The shooting of DeJesus was not a necessary predicate to a finding of guilt on the conspiracy charge, and thus, the crimes committed were separate and distinct. The trial court instructed the jury to consider the two charges separately. (*See* Trial Tr. at 753:10–14; 754:3–8.) The jury heard testimony regarding the numerous overt acts alleged in the indictment, any one of which could have satisfied the jury beyond a reasonable doubt that an overt act was committed. Accordingly, the Court finds that Diaz's consecutive sentences do not violate § 70.25(2).

The Court concludes that there is no federal constitutional violation to warrant habeas relief from the trial court's imposition of consecutive sentences because the sentences do not violate state law. *See White,* 969 F.2d at 1383. Accordingly, the Court rejects Diaz's challenge to the imposition of consecutive sentences for the crimes for which he was convicted.

### 4. *Ineffective Assistance of Counsel*

█ Finally, Diaz challenges the effectiveness of his trial counsel for stipulating

to the unavailability of Ocasio, whose damaging out-of-court statements regarding Diaz were introduced at trial through Ortiz's testimony. (*See* Addendum at 3.) Diaz further challenges the effectiveness of his appellate counsel for failing to raise this alleged error on direct appeal to the Appellate Division. (*See id.*) Ocasio's statements were admitted as statements of a co-conspirator made in the furtherance of the conspiracy and as statements against penal interest. (*See* Trial Tr. 289:10–24.) The parties agreed that Ocasio was unavailable because if called to testify, he would assert his Fifth Amendment privilege against self-incrimination. (*See id.* at 189:19:191:19.)

At the outset, the Court notes that Diaz raised this claim in his *coram nobis* petition to the Appellate Division. The Appellate Division denied Diaz's petition summarily and without a written opinion. Hence, it is difficult for this Court to determine whether this issue was decided on the merits, which would trigger the deferential AEDPA standard of review. On the other hand, the record does not suggest any reason why the Appellate Division would have denied Diaz's *coram nobis* claim on procedural grounds. Consequently, it would appear that the Appellate Division's denial of the petition both disposed of the claim on the merits; and reduced its disposition to judgment to satisfy the requirements of an adjudication on the merits under the AEDPA. *See Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir. 2001). However, given that the Appellate Division's ruling is devoid of any discussion on the matter, the Court will grant Diaz the benefit of the doubt and consider this claim *de novo* to assure that there has been no miscarriage of justice in denying review.

After due consideration of the parties' arguments in light of the United States Supreme Court's *Strickland* test and the record in this case, the Court finds that Diaz's ineffective assistance of counsel claim, like his other claims, is baseless. In order to assess the performance of Diaz's counsel at both the trial and appellate levels, it is necessary to first address the underlying acts or omissions that Diaz is alleging gave rise to his counsel's ineffectiveness.

As discussed above, the Court's analysis on habeas review must be confined to a federal constitutional or statutory provision as mandated by § 2254. In this case, Diaz raises this challenge under the Confrontation Clause and right to counsel contained in the Sixth Amendment. (*See* Addendum at 3, 5.) With regard to the invocation of the Confrontation Clause, Diaz asserts that he was denied this right when Ocasio's out-of-court statements were introduced at his trial. (*See id.*) The Court interprets Diaz's claim here as a thinly-veiled challenge to the admissibility of the statements.

On habeas review, the Court need only determine whether the challenged statements run afoul of the Confrontation Clause. *See Glenn v. Bartlett,* 98 F.3d 721, 728 (2d Cir.1996). In *Glenn,* the Second Circuit made clear that "even if [the] admission of [a co-conspirator's] statement violated New York law-which unlike federal law requires independent indicia of reliability for a co-conspirator's statement-the statement does not offend the federal Confrontation Clause if it falls within [Federal] Rule [of Evidence] 801(d)(2)'s co-conspirator exception."[9] *Id.* This holding is consistent with prior United States Supreme Court precedent. *See Bourjaily v. United*

---

**9.** The same is true for statements against penal interest. *See United States v. Stratton,* 779

F.2d 820, 830 (2d Cir.1985).

*States,* 483 U.S. 171, 183–84, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

■ The admission of a co-conspirator's statement under the hearsay exception embodied in Federal Rule of Evidence 801(d)(2) ("Rule 801(d)(2)") requires a court to find that: (1) there was a conspiracy; (2) the conspiracy had as its members both the declarant and the person against whom the statements are being offered; and (3) the statements were made in the course of and in furtherance of the conspiracy. *See United States v. Alameh,* 341 F.3d 167, 176 (2d Cir.2003) (citation omitted). These are factual inquires for the court to find by a preponderance of the evidence. *See id.* (citing *Bourjaily,* 483 U.S. at 175–76, 107 S.Ct. 2775).

■ The trial court found these elements satisfied and accordingly, admitted

Ocasio's statements through Ortiz's testimony.[10] (*See* Trial Tr. at 289:10–290:3.) As discussed above, this Court presumes the correctness of any factual findings of the trial court. Diaz makes only conclusory statements regarding those findings and accordingly, has not persuaded this Court that they are erroneous. Thus, Diaz has failed to carry his burden of rebutting the presumption of correctness by clear and convincing evidence. The Court's own review of the record in this case supports a finding that Ortiz's statements would fall within the hearsay exception of Rule 801(d)(2). Because the admission of Ortiz's out-of-court statements satisfy the requirements of Rule 801(d)(2) for co-conspirator's statements, the Court finds that Diaz's Confrontation Clause rights were not violated when Ocasio's statements were admitted at trial.[11] *See United*

10. The New York standard for the admission of co-conspirator statements is substantially similar to the federal standard. *See People v. Wolf,* 98 N.Y.2d 105, 745 N.Y.S.2d 766, 772 N.E.2d 1124, 1132 (2002). New York requires an additional showing of some measure of reliability. *See Glenn,* 98 F.3d at 728.

11. Diaz has submitted a second addendum to his petition to call to the Court's attention the recent decision of the United States Supreme Court in *Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Diaz asserts that the principle enunciated in *Crawford* applies to this case and he urges the Court to consider it with regard to his Confrontation Clause claim. Upon a careful reading of *Crawford,* the Court finds that it does not affect the Court's analysis and decision in this case. In *Crawford,* the Supreme Court held that out-of-court statements that fall within the classification of "testimonial" in nature may not be admitted at trial, even if the trial court finds the statements to be reliable, unless the declarant is unavailable and there had been a prior opportunity for cross-examination. *See id.* at 1374. The Court reasoned that only by cross-examination could the reliability of such testimonial statements be assured. *See id.* Although the *Crawford* Court declined to provide an ex-

haustive list of what constitutes "testimonial" statements, it cited as examples: prior testimony at a preliminary hearing, testimony before a grand jury or at a prior trial, and statements made during police interrogations. *See id.* The Court stated explicitly that statements in furtherance of a conspiracy are not testimonial in nature. *See id.* at 1367. A vital element common to the decisions that have held that an accomplice's hearsay statements are inadmissible against a defendant is that the statements were made as part of the accomplice's appearance before a governmental authority, usually a police interrogation. *See, e.g., id.* at 1356–57 (unindicted accomplice's statements made to police); *Lilly v. Virginia,* 527 U.S. 116, 120–21, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (accomplice's hearsay statements at issue elicited by the police); *Lee v. Illinois,* 476 U.S. 530, 541–46, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) (finding a violation of the Confrontation Clause in the admission of a co-defendant's hearsay confession to the authorities that implicated the defendant). The Supreme Court made clear in *Crawford* that where non-testimonial hearsay is at issue, the application of traditional state hearsay rules can continue to exempt such statements from Confrontation Clause scrutiny. *See Crawford,* —— U.S. at ——, 124 S.Ct. at 1374. In this case, the statements Ocasio made to

*States v. Inadi,* 475 U.S. 387, 394–95, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (discussing that a co-conspirator's statements made during the conspiracy are not easily replicated in the courtroom and noting that "[c]onspirators are likely to speak differently when talking to each other in furtherance of their illegal aims than when testifying on the witness stand").

 Even if the admission of Ocasio's statements at trial somehow violated Diaz's rights under the Confrontation Clause, the Court finds that the error would be harmless beyond a reasonable doubt. Although Ortiz testified as to what Ocasio told him with regard to the previous attempt to murder DeJesus, Ortiz also testified as what he saw and heard on the day of the murder—testimony that is independent of Ocasio's statements and equally probative of Diaz's guilt on both the conspiracy and murder charges. Specifically, Ortiz testified that he was with Haywood, Rivera, and Ocasio when Diaz pulled up in his vehicle.[12] (*See* Trial Tr. at 312:8–31315.) Ortiz recalled getting into the vehicle with the others, observing Diaz hand a gun to Haywood, and hearing Diaz say: "You gotta kill the lady now." (*See id.* at 314:8–18.) It was at this point that Ortiz and Ocasio backed out of the plot and exited the vehicle. (*See id.* at 314:18–20.) Ortiz testified that sometime later, he observed Rivera place the gun in Diaz's vehicle and Diaz hand money to Haywood and Rivera. (*See id.* at 317:9–318:2.)

The Court finds that Ortiz's non-hearsay account of the events on the day of the murder, corroborated by Jimenez's and/or Cooper's testimony, together with the testimony of the other witnesses,[13] is sufficient for a jury to have found beyond a reasonable doubt that Diaz was guilty of both the conspiracy and murder charges. While Ocasio's statements may have provided additional support for the State's conspiracy case against Diaz, it was hardly the linchpin. Accordingly, if Diaz's Confrontation Clause rights were violated by the admission of Ocasio's statements, the totality of all the other evidence adduced at trial amply supports the conviction, and hence, any error was harmless beyond a reasonable doubt. *See Lee v. Illinois,* 476 U.S. 530, 547, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) (stating that although a Confrontation Clause violation occurred, it did not "foreclose the possibility that [the] error was harmless when assessed in the context of the entire case against [the defendant]") (citation omitted).

 Turning to Diaz's ineffective assistance of counsel claim, it is clear that Diaz has not rebutted the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" as required by the first *Strickland* prong. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. For purposes of the Confrontation Clause, a declarant who makes clear that he will assert his Fifth Amendment

Ortiz that are at issue here were not testimonial in nature, as they were statements between co-conspirators that were made outside the types of settings that the Supreme Court discussed in *Crawford* in defining what constitutes testimonial statements. Accordingly, Diaz's reliance on *Crawford* is misplaced.

12. Ortiz also gave a description of the vehicle that matched the description of Diaz's vehicle. Ortiz also made an in-court identification of Diaz as the driver of the vehicle. (*See* Trial Tr. at 313:10–314:7.)

13. For example, the jury also heard testimony from Leveret Knowles ("Knowles"), an accountant DeJesus hired a few months before her death to assist with the audit of Promesa's books. (*See* Trial Tr. at 339:2–341:7.) Knowles testified that Diaz had access to cash at the Clay Avenue facility and that on one occasion, Diaz questioned Knowles as to what he was doing. When Knowles stated that he was reconstructing the financial records, Diaz, appearing agitated, responded: "I'll bet you're on somebody's mission." (*See id.* at 343:15–344:6.)

right against self-incrimination if called to testify is considered an unavailable witness to both parties. *See Latine v. Mann,* 25 F.3d 1162, 1166 (2d Cir.1994); *United States v. Kusek,* 844 F.2d 942, 950–51 (2d Cir.1988). The same rule applies under New York State law. *See People v. Savinon,* 100 N.Y.2d 192, 761 N.Y.S.2d 144, 791 N.E.2d 401, 405 (2003) ("[A] witness who on Fifth Amendment grounds refuses to testify will be considered 'unavailable' although the witness's presence is known and apparent . . . . An accomplice (whether charged as such or not) who can be expected to invoke a privilege would similarly be unavailable.").

The record in this case makes clear that Ocasio, who was an unindicted co-conspirator involved in the first attempt on DeJesus's life, would have asserted his Fifth Amendment rights if called to testify. In fact, Ocasio was produced at Diaz's trial by subpoena for the purpose of testifying, but upon discussions between the parties, it was determined that he would assert his rights against self-incrimination.[14] (*See* Trial Tr. at 189:19–191:19.) Under these circumstances, Diaz's trial counsel had little in the way of options. Thus, it was neither unreasonable nor a serious lapse in judgment for Diaz's trial counsel to stipulate to Ocasio's unavailability.

Moreover, to the extent that Diaz's ineffective assistance of counsel claim is rooted in his trial counsel's alleged failure to prevent the admission of Ocasio's statements, the record indicates that trial counsel, in fact, did object to the introduction of these out-of-court statements on the grounds that they were not co-conspirator statements or statements against penal interest subject to a hearsay exception. The trial court overruled the objection. (*See* Trial Tr. at 286:19–290:1; 306:5–20; 498:14–

501:19.) Thus, Diaz has failed to demonstrate a serious deficiency in the conduct of his trial counsel to satisfy the first prong of *Strickland.*

The Court likewise finds that Diaz has failed to demonstrate, under the second *Strickland* prong, that there is a reasonable probability that the alleged error by his counsel changed the result of the trial. As discussed above, Diaz's guilt was adequately established even without Ocasio's out-of-court statements. Thus, the Court is not persuaded that any alleged error by trial counsel in stipulating to Ocasio's unavailability was prejudicial. Because the Court concludes that Diaz's trial counsel was not ineffective on the asserted grounds, it follows that Diaz's appellate counsel was likewise not ineffective for failing to raise an ineffective assistance of trial counsel claim before the Appellate Division based on the same circumstances.

For the foregoing reasons, the Court finds no merit to any of Diaz's grounds upon which he seeks a writ of habeas corpus. The petition is denied.

### III. *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that the petition of Borys Diaz ("Diaz") for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED in its entirety.

As Diaz has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c).

---

**14.** The State points out that at Haywood's trial, Ocasio, Rivera, and Diaz himself were all produced in court to determine whether they would testify and all three indicated that if called, they would assert their Fifth Amendment rights. (*See* St. Mem. at 19–20.)